**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Robert Earl BESS, Defendant-Appellant.**

**No. 78–5095.**

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 13, 1978.

Decided Feb. 28, 1979.

As Amended April 11, 1979.

Thomas L. Osborne, Osborne, Deatherage & Fletcher, Hopkinsville, Ky., for defendant-appellant.

Albert Jones, U. S. Atty., James H. Barr, Asst. U. S. Atty., Louisville, Ky., for plaintiff-appellee.

Before CELEBREZZE and KEITH, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

KEITH, Circuit Judge.

A jury convicted appellant Robert Earl Bess, of concealing and retaining United States Government property worth over $100 while knowing that the property had been unlawfully converted. 18 U.S.C. § 641. As this case presents yet another instance of prosecutorial misconduct by the United States Attorney's office for the

Western District of Kentucky, we reverse and remand for a new trial.

## I

The facts of this case are strikingly similar to the facts in the famous case of *Morissette v. United States*, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952). The Fort Campbell Military Reservation encompasses several thousand acres in Tennessee and Kentucky. This area is used by the military for maneuvers and gunnery practice. When not used as an artillery range, the area is open to the public. Local residents hunt, fish, picnic and, apparently, occasionally pick up shells and scrap metal in the area. It was this last activity, the picking up of shells and scrap metal, that gave rise to the prosecution which results in this appeal.

For over twenty (20) years various members of appellant's family, including children, would go to Fort Campbell on a regular basis to pick up shells and scrap metal. These "junking trips" were family affairs. The family would spend a pleasant day picnicking and relaxing and would then return home with metal which could be sold for scrap. The scrap mental was primarily debris from old military vehicles which had been used for target practice by the military.

Although appellant made a number of "junking trips," this prosecution emanates from two of them. On July 4, 1977, appellant and a large number of family members went to Fort Campbell. Appellant brought his truck and, with the assistance of various friends and family members, picked up 4,510 pounds of aluminum and other scrap metal. The metal was taken home for cleaning and eventual sale to a junk dealer. On July 31, 1977, appellant loaded his truck with metal a second time; the weight of this load was approximately 5,060 pounds.

An ever vigilant Deputy Sheriff, Herman Epley, got wind of the Fort Campbell "junking trips" and notified the F.B.I. The

F.B.I. investigated and received the full cooperation of appellant. He openly admitted taking the metal from the reservation, and told the entire story behind the "junking trips." Appellant maintained that the scrap metal had been abandoned by the United States Government and was lawfully his property. When threatened with prosecution, however, appellant agreed to return the metal to Fort Campbell. Accordingly, 5,060 pounds of the metal were returned to Fort Campbell on August 5, 1977, three days after the initial interview with the F.B.I.

On September 17, 1977, Deputy Sheriff Epley executed a search warrant issued by a state judge on appellant's home.[1] During the search, Epley observed scrap metal and shells in appellant's garage. The F.B.I. was again called in.

Upon being interviewed a second time, appellant explained that scrap metal and shells had been taken on or about July 4, 1977, but that he had not returned them out of foolish fear resulting from the agent's earlier threat of prosecution. Appellant explained that he had intended all along to return the scrap to Fort Campbell on his own but that he had had difficulty finding someone to help him.

Apparently miffed at finding that appellant had retained some scrap, the United States Attorney's office for the Western District of Kentucky, in its wisdom, determined that it had to prosecute, and sought a grand jury indictment, which was handed down.

The government's case consisted almost entirely of appellant's own admissions to the F.B.I. as to what he had done. Appellant's defense was that the property had been abandoned by the government and that he had a lawful right (or at least he thought that he did) to take the scrap and sell it for junk. The jury acquitted appellant of stealing the scrap metal and ammu-

---

1. The circumstances which led to the issuance of the search warrant are not entirely clear. The record contains disturbing allegations of threats and vendettas between Bess' in-laws and the Deputy Sheriff. We are not informed of the nature or extent of state proceedings against the defendant.

nition but convicted him of retaining the scrap metal knowing that it was stolen.

As the government concedes in its brief, the jury's verdict reveals that it concluded that defendant believed that the scrap metal was abandoned by the government when the defendant took it from the reservation, but that he had been subsequently put on notice that the scrap was not abandoned property. The jury must have determined that appellant was thus guilty of converting the unreturned scrap to his own use when he retained and concealed it in his garage where it was discovered during the execution of the search warrant.

## II

■ Appellant's first contention is that he was entitled to a judgment of acquittal because the evidence indisputably showed that he himself had taken the property, and that a person cannot be guilty of both stealing certain property and receiving the same stolen property.[2] It is unquestionably true that the jury thought that appellant did not initially remove the scrap metal and ammunition from the military reservation with the intent to steal it. However, the jury could reasonably have found on these facts that appellant's failure to return the scrap metal after the F.B.I. put him on notice

that the property was not abandoned, amounted to a violation of 18 U.S.C. § 641.[3]

■ Appellant secondly claims that the shell casings, scrap and ammunition were abandoned by the government and that therefore, he could not be convicted of concealing government property, as a matter of law. This argument gives us pause because the evidence shows that the scrap had been left out in an area open to the public and was so mangled that it could never be reused for its original purpose. In addition, the military authorities apparently, never acted to prevent people from carrying it off.[4] However, we must review motions for judgment of acquittal in the light most favorable to the government. See Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); United States v. Green, 548 F.2d 1261, 1266 (6th Cir. 1977). The metal had a scrap value of approximately 16½ cents per pound. More important, the metal was indisputably on government property. Further, there was evidence that appellant had made unsuccessful efforts to obtain a government contract to haul away the scrap metal and ammunition. The district judge gave defendant's requested instruction on abandoned property.[5] A jury could reasonably

2. Appellant is relying here on a common-law based rule which has been read into federal criminal statutes by the Supreme Court. See United States v. Gaddis, 424 U.S. 544, 96 S.Ct. 1023, 47 L.Ed.2d 222 (1976); Heflin v. United States, 358 U.S. 415, 79 S.Ct. 451, 3 L.Ed.2d 407 (1959).

3. 18 U.S.C. § 641 provides:
     Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof; or
     Whoever receives, conceals, or retains the same with intent to convert it to his use or gain, knowing it to have been embezzled, stolen, purloined or converted—
     Shall be fined not more than $10,000 or imprisoned not more than ten years, or both; but if the value of such property does not exceed the sum of $100, he shall be fined not

more than $1,000 or imprisoned not more than one year, or both.
     The word "value" means face, par, or market value, or cost price, either wholesale or retail, whichever is greater.
We note that the Supreme Court has specifically ruled that under 18 U.S.C. § 2112, the government can charge a defendant with both robbery and receiving the proceeds of a robbery. A defendant cannot be convicted of both charges, but the jury can elect to convict on either. See United States v. Gaddis, supra, 424 U.S. at 550, 96 S.Ct. 1023.

4. This situation is factually different from that in Morissette v. United States, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952), where a large sign read "Danger—Keep Out—Bombing Range" id. at 247, 72 S.Ct. 240.

5. For an excellent discussion of the law of abandoned property and its applicability to situations such as the one here, see Morissette v. United States, 187 F.2d 427, 441–442 (6th Cir. 1951) (McAllister, J., dissenting), rev'd, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952).

have found, as this jury implicitly did, that the property was not abandoned.[6]

## III

As is apparent, this was a close case. There was no dispute as to what had transpired, the sole question was whether the jury would be willing to find criminal intent. The jury's verdict indicates that it did not think that defendant took the scrap metal from the military reservation with the specific intent to steal it. Instead, the jury apparently compromised and found the defendant culpable under 18 U.S.C. § 641 because he did not return a load of scrap after the F.B.I. requested him to so so.

Credibility was the key issue. The government's case was based on admissions made by the defendant. Similarly, the cornerstone of the defense was the defendant's credibility on the witness stand when he testified that he had never intended any wrongdoing and that his failure to return the second load of scrap resulted from foolhardy timidity.

Defendant's case was well presented and well argued by able defense counsel. In his eagerness to convict, the prosecutor attempted to tip the scales in his favor by making the following statement during his closing argument:

If the United States did not believe the defendant was guilty of committing these charges in the indictment, based on the evidence that has been presented to you, this case, of course, would have never been presented to you in the first place. It never would have been presented to you.

Defense counsel promptly objected and moved for a mistrial, but was overruled. Defense counsel then spent a large portion of his closing argument emphasizing to the jury that they alone were the fact finders in the case and that whether a person is indicted is irrelevant to the final determination of guilt or innocence; that a person is presumed innocent until proved guilty beyond a reasonable doubt. After defense counsel presented his closing argument to the jury, the Assistant United States Attorney rose to make his rebuttal. He opened with the following statement:

Ladies and Gentlemen, my concluding remarks in this case in response to the defendant's statement that I have decided the defendant's guilt or innocence, I merely told you in my argument based on the evidence that has been presented to you in this trial, *I believe beyond a reasonable doubt that the defendant unlawfully took or concealed the metal or ammunition.* (Emphasis added)

Defense counsel immediately objected and again moved for a mistrial, but again was overruled.

■ We can only express our astonishment that a prosecutor could make the statements quoted above. We join the Fifth Circuit in expressing our dismay at the continuing problem with improper statements in summations by counsel. *See United States v. Morris*, 568 F.2d 396, 401–403 (5th Cir. 1978). *Cf. Rachel v. Bordenkircher*, 590 F.2d 200 (6th Cir. No. 78–3040, *decided* Dec. 29, 1978) (Improper prosecutorial comment on defendant's failure to take the stand). An attorney's job arguing a case before a jury is to persuade that body, based solely on the proof at trial and reasonable inferences that can be deduced therefrom. This rule applies to both civil and criminal cases and to both defense and prosecuting counsel. *See Rommel-McFerran Co. v. Local Union No. 369*, 361 F.2d 658, 661–62 (6th Cir. 1966).

■ Prejudicial statements are doubly inexcusable when they are made by a prose-

---

**6.** We confess some disquiet over the district court's giving of an instruction to the jury that unexplained possession of recently stolen property could result in the inference that the possessor knew that the property was stolen. *See* 2 Devitt & Blackmar, Federal Jury Practice and Instructions § 44.11 (3d Ed. 1977). In this case, there was no dispute that defendant had taken the property. The instruction was thus unnecessary and potentially confusing, especially since the district court declined to give a clarifying supplemental instruction requested by defense counsel. *Cf. United States v. Ashley*, 587 F.2d 841 (6th Cir. 1978). In light of our disposition of this case, we need not determine, whether this was reversible error.

cuting attorney. Once again we quote the "oft-repeated and sometimes ignored"[7] words of the Supreme Court in *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935):

> The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

More to the point on the facts of this case are the pungent words of Mr. Justice Douglas:

> The function of the prosecutor under the Federal Constitution is not to tack as many skins of victims as possible to the wall. His function is to vindicate the right of people as expressed in the laws and give those accused of crime a fair trial.

*Donnelly v. DeChristoforo*, 416 U.S. 637, 648–49, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974) (Douglas, J. dissenting).

■■■ Here, the transgressions of the prosecutor were egregious. First, it is always improper for a prosecutor to suggest that a defendant is guilty merely because he is being prosecuted or has been indicted.

*See United States ex rel. Clark v. Fike*, 538 F.2d 750, 759 (7th Cir. 1976), *cert. denied*, 429 U.S. 1064, 97 S.Ct. 791, 50 L.Ed.2d 781 (1977); *United States v. Bowen*, 500 F.2d 41 (6th Cir.), *cert. denied*, 419 U.S. 1003, 95 S.Ct. 322, 42 L.Ed.2d 278 (1974); *United States v. Lamerson*, 457 F.2d 371, 372 (5th Cir. 1972). The prosecutor's first statement was in patent violation of this rule; we do not believe that his interjection of the words "based on the evidence presented to you" in any way diminished the error.[8]

■■■ Aside from this, both of the above-quoted statements violate the established rule that the personal opinion of counsel has no place at trial. *See United States ex rel. Clark v. Fike, supra*; *United States v. Corona*, 551 F.2d 1386 (5th Cir. 1977); *United States v. Cain*, 544 F.2d 1113, 1116 (1st Cir. 1976).

This prohibition against interjection of personal opinion by an attorney has been codified in the code of professional responsibility of the American Bar Association:

> DR 7–106(C)  In appearing in his professional capacity before a tribunal, a lawyer shall not:
>
> \*    \*    \*    \*    \*    \*
>
> (4) Assert his personal opinion as to the justness of a cause, as to the credibility of a witness, as to the culpability of a civil litigant, or as to the guilt or innocence of an accused; but he may argue, on his analysis of the evidence, for any position or conclusion with respect to the matters stated herein.

Further, the American Bar Association's Standards for Criminal Justice No. 5.8 provides:

> (b) It is unprofessional conduct for the prosecutor to express his personal belief or opinion as to the truth or falsity of any

---

7.  *United States v. Leon*, 534 F.2d 667, 678 (6th Cir. 1976).

8.  The prosecutor's statement here was remarkably similar to the following statement, condemned in *United States v. Splain*, 545 F.2d 1131, 1134–35 (8th Cir. 1976):

    > The U.S. Attorney's Office also wants to see justice done in a case and the U.S. Attorney's Office doesn't file a case unless they really

feel that there is—a man has committed a crime and we are not out intentionally picking on Bobby Splain because he is different than we are or different than you are as jury members. We are trying to convict Bobby Splain because he committed a crime and we are convinced of that or we wouldn't be trying him.

testimony or evidence or the guilt of the defendant.

The devastating impact of statements such as those quoted above should be apparent, especially where a jury faces difficult credibility issues. During a trial, the jury has gotten to know counsel for both sides, almost on a personal level. They are the ones who address the jury directly and present the evidence. It is accurate to state that competent counsel necessarily must try to establish their individual personalities before the jury as part of their attempts to persuade that body to rule in favor of their respective clients.

An Assistant United States Attorney purports to represent the People of the United States, and thus carries a special aura of legitimacy about him. Indeed, seeking to take advantage of his stature as a federal prosecutor, the Assistant United States Attorney here made the following statement immediately upon commencing his opening argument to the jury:

> Ladies and Gentlemen, . . . as was mentioned earlier, I am from the United States Attorney's office, and I represent the United States, and those of us in particular who live in the Western District, those citizens, of course, who live in the Western Judicial District of Kentucky, which, of course, include all counties in the Paducah Division. If you haven't sat as a juror in a criminal case before, you will find that it is my job to call the witnesses who know something about the case and to see that relevant items are introduced into evidence. It is also my obligation, or object to see that the defendant receives a fair trial. If the evidence does not show the defendant committed some offense named in the count of the indictment, then I will ask you to find him not guilty. If the evidence does show beyond a reasonable doubt that he is guilty of committing some offense, then I will ask you to find him guilty of those charges.[9]

Implicit in an assertion of personal belief that a defendant is guilty, is an implied statement that the prosecutor, by virtue of his experience, knowledge and intellect, has concluded that the jury must convict. The devastating impact of such "testimony" should be apparent. Equally apparent should be the serious infringement upon a defendant's due process rights. Such statements infringe upon the role of the jury as fact finder and determiner of guilt or innocence. They amount to inadmissible and highly prejudicial evidence.

Additional reasons for the rule were advanced in H. Drinker, Legal Ethics 147 (1953):

> There are several reasons for the rule, long established, that a lawyer may not properly state his personal belief either to the court or to the jury in the soundness of his case. In the first place, his personal belief has no real bearing on the issue; no witness would be permitted so to testify, even under oath, and subject to cross-examination, much less the lawyer without either. Also, if expression of personal belief were permitted, it would give an improper advantage to the older and better known lawyer, whose opinion would carry more weight, and also with the jury at least, an undue advantage to an unscrupulous one. Furthermore, if such were permitted, for counsel to omit to make such a positive assertion might be taken as an admission that he did not believe in his case.

Given the above-stated sound reasons for the rule, it should be apparent that expressions of personal belief of the innocence or guilt of an accused are error regardless whether such expressions are phrased in such a way as to suggest knowledge of outside evidence not before the jury. Many expressions of personal belief

---

9. We have serious qualms over the propriety of statements such as these where the prosecutor makes himself out to be a personal representative of the local citizenry and portrays himself as an impartial truth-seeker who will not ask for a conviction unless the evidence shows guilt beyond a reasonable doubt.

No objection was made and this issue was not raised on appeal. In light of our disposition here, we need not address this any further.

carry with them the clear import that counsel knows something which the jury doesn't and this is an additional reason to condemn them. Even without this, however, statements of personal belief before the jury should not take place.

In this case, the prosecutor was careful to interject the statement that his belief was "based on the evidence which has been presented to you [the jury]." We do not believe that the use of this disclaimer should convert improper argument into proper argument. The adverse impact of personal expressions of opinion is still present, regardless whether counsel purports to limit the basis of his opinion to the facts at trial. Further, to blink at what the prosecutor did here is to allow the prosecutor "with impunity [to] import his personal vouching into his argument at almost any point." *United States v. Gonzalez Vargas*, 558 F.2d 631, 633 (1st Cir. 1977).

A number of early cases, without careful analysis, drew the distinction which the prosecutor here did. That is, that expressions of personal belief of guilt or innocence are allowable so long as it is clear that they are based on the evidence produced at trial. *See Schmidt v. United States*, 237 F.2d 542 (8th Cir. 1956) (argument "I believe in the guilt of these two defendants under this evidence" was proper); *United States v. Battiato*, 204 F.2d 717 (7th Cir.), *cert. denied*, 346 U.S. 871, 74 S.Ct. 118, 98 L.Ed. 380 (1953) (statement that prosecutor believed defendants were guilty was proper because there was no indication that the belief was based on personal knowledge). *Cf. Thompson v. United States*, 272 F.2d 919 (5th Cir. 1959), *cert. denied*, 362 U.S. 940, 80 S.Ct. 805, 4 L.Ed.2d 769 (1960).

Interestingly, a leading case on this issue was decided by this circuit. In *Henderson v. United States*, 218 F.2d 14, 19 (6th Cir.),

*cert. denied*, 349 U.S. 920, 75 S.Ct. 660, 99 L.Ed. 1253, *rehearing denied*, 349 U.S. 969, 75 S.Ct. 879, 99 L.Ed. 1290 (1955), a divided court stated:

It is of course permissible for the district attorney to ask the jury for a conviction. [citation omitted] In doing so the district attorney has the right to summarize the evidence and urge upon the jury all reasonable inferences and deductions from the evidence. It is not misconduct on his part to *express* his individual belief in the guilt of the accused if such belief is based solely on the evidence introduced and the jury is not led to believe that there is other evidence, known to the prosecutor but not introduced, justifying that belief.

In retrospect, we think that Judge McAllister's dissent on this issue had the better of the argument. *See id.* at 20–23. More important, we do not think that the above-quoted language can survive *United States v. Daniel*, 422 F.2d 816 (6th Cir. 1970) where this court stated that personal belief arguments were improper, even when it was clear that they were based solely on the testimony advanced at trial. In light of our discussion above, we are persuaded that *Henderson's* approval of certain statements of personal belief was unsound and join the courts which have unequivocally condemned such conduct. *See United States v. Gonzalez Vargas*, 558 F.2d 631 (1st Cir. 1977); *United States v. Leeds*, 457 F.2d 857, 861 (2d Cir. 1972); *Harris v. United States*, 131 U.S.App.D.C. 105, 402 F.2d 656 (1968) (Burger, J.).

We do not adopt a *per se* reversible error rule, however. The threshold determination should be whether counsel's comments can be reasonably construed to be based on personal belief.[10] If so, the

---

10. For example, the statement made here "based on the evidence that has been presented to you in this trial, I believe beyond a reasonable doubt that the defendant unlawfully took or concealed the metal or ammunition," is unquestionably a statement of personal belief.

We realize that oftentimes it will be a close question whether a prosecutor oversteps. Il-

lustrative of the problem is use of the words "I believe." The Fifth Circuit has done a good job in drawing the line between permissible and impermissible argument:

Thus, an attorney properly may state, "I believe that the evidence has shown the defendant's guilt," *United States v. Wayman*, 510 F.2d 1020, 1028 (5th Cir.), *cert. denied*,

statements should ordinarily be deemed to be error.[11] More commonly, however, the complained-of conduct will not rise to *reversible* error, notably if it is not flagrant, where proof of guilt is over-whelming, where counsel does not object and/or where the trial judge steps in and admonishes the jury. *See Berger v. United States, supra,* 295 U.S. at 89, 55 S.Ct. 629; *United States v. Morris, supra* at 402; *United States v. Splain, supra* at 1135; *United States v. Daniel, supra*; *United States v. Bowen, supra* at 42. Indeed, it is notable how often courts cite improper argument by a prosecutor and how seldom they reverse convictions because of it.

This overall approach is akin to that taken by the First Circuit in *Greenberg v. United States*, 280 F.2d 472 (1st Cir. 1960) and its progeny, *e. g. United States v. Gonzalez Vargas, supra*; *United States v. Cotter*, 425 F.2d 450, 452–53 (1st Cir. 1970); *Patriarca v. United States*, 402 F.2d 314, 320–21 (1st Cir. 1968), *cert. denied*, 393 U.S. 1022, 89 S.Ct. 633, 21 L.Ed.2d 567 (1969). We feel that this approach is preferable to that of many decisions which "announce no precise rule either of permission or prohibition easily applied without reference to the context of the particular case." *United States v. Medlin*, 353 F.2d 789, 796 (6th Cir. 1965), *cert. denied*, 384 U.S. 973, 86 S.Ct. 1860, 16 L.Ed.2d 683 (1966). In practice, however, the rule herein advanced should have minimal effect on appellate review. What it will do is maximize opportunity for curative steps at the trial level by clarifying what argument is proper and what is improper.

In this case, we think that the prosecutor's conduct was inexcusable. His comments to the jury were clearly improper as statements indicating that the jury should convict 1) because charges were brought and 2) because personally he thought that defendant was guilty. His statements were promptly objected to and the trial judge failed to give immediate curative admonishment. The issues at trial were close and the prosecutor's misconduct was great. We think that these facts present a clear and compelling case for reversal.

Reversed and remanded for a new trial, should the government choose to re-try defendant.

---

423 U.S. 846, 96 S.Ct. 84, 46 L.Ed.2d 67 (1975), but he may not state, "I believe that the defendant is guilty." Similarly, an attorney properly may state, "No conflict exists in the testimony of the prosecution's witnesses." *United States v. McDowell*, 539 F.2d 435, 438 (5th Cir. 1976), but he may not state, "The prosecution's witnesses are telling the truth," or "I believe that the prosecution's witnesses are telling the truth." *United States v. Lamerson*, 457 F.2d 371, 372 (5th Cir. 1972).

*United States v. Morris*, 568 F.2d 396, 402 (5th Cir. 1978). *See also United States v. Sawyer*, 347 F.2d 372 (4th Cir. 1965).

We reiterate that under many circumstances, this type of prosecutorial error will not be prejudicial. We write to draw the line as clearly as possible to encourage proper argument and alert both opposing counsel and trial judges so that corrective measures can be taken on the spot.

**11.** There does exist one rare circumstance where statements of personal belief are proper. A prosecutor has the right to reply when defense counsel opens the door by strongly impugning the former's integrity or motivation. *See Lawn v. United States*, 355 U.S. 339, 359 n. 15, 78 S.Ct. 311, 2 L.Ed.2d 321 (1957); *United States v. Hoffa*, 349 F.2d 20, 50–51 (6th Cir. 1965), *aff'd on other grounds*, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966); *Gridley v. United States*, 44 F.2d 716, 739 (6th Cir.), *cert. denied*, 283 U.S. 827, 51 S.Ct. 351, 75 L.Ed. 1441 (1930).