959 F.2d 236
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Samuel L. ESTES, Defendant-Appellant.
 No. 91-5510.
 United States Court of Appeals, Sixth Circuit.
 April 8, 1992.
 
 Before KEITH and SILER, Circuit Judges, and BERTELSMAN, District Judge.*
 PER CURIAM:
 
 
 1
 Defendant-appellant, Samuel Estes ("Estes"), appeals his jury conviction for possession of a prohibited object which was a weapon in violation of 18 U.S.C. § 1791(a). Estes brings two assignments of error. He first contends that he was denied his Sixth Amendment right to a fair trial because of an improper closing argument by the United States. Estes further contends that the jury instructions for both joint and constructive possession of the weapon were improper. In light of our standard of review, we AFFIRM the jury conviction based on the record below.
 
 
 2
 Estes was a prisoner in the federal correctional institution in Memphis, Tennessee. On January 13, 1990, Orlando Brown, an officer in the correctional facility, testified that he observed a group of inmates in his unit standing and talking in the hallway. Estes was among the group that Officer Brown observed. As Officer Brown approached the group, he further observed that one of the men held a homemade weapon which he called a "shank." Since Officer Brown only wore a body alarm, with which he could alert other staff personnel if any problems arose, he initially retreated to protect himself from what he thought was to be an assault on his person. Officer Brown further testified that he saw a second shank on the floor, but an unidentified inmate placed his foot on it.
 
 
 3
 Officer Brown then observed another inmate, Jerry Gaines, grab Michael Merchant, Estes' cellmate, and placed a coat over Merchant's head while several inmates punched him. At this time, Officer Brown observed Estes stabbing Merchant with a shank, and grabbed Estes' arm and wrestled him to the ground. Because Estes refused to release the shank voluntarily, he testified that he had to take the weapon from Estes. Officer Brown testified that he did not know how Estes had obtained the shank. He then stated that he sounded his body alarm for assistance.
 
 
 4
 Randy White, a special investigator for the federal prison, conducted the ensuing investigation. He stated that Estes told him that Merchant, his cellmate, had been drinking during that day and that Merchant made homosexual advances to him in his cell.[2] Estes told the investigator that he then left the cell and went to the prison gymnasium. Upon his return to the cell, Estes stated that Merchant approached him in the corridor where the altercation took place with the metal shank. Estes was able to take the shank away from Merchant, and then Officer Brown appeared and wrestled him to the ground.
 
 
 5
 Other testimony proffered by the defense also contradicted Officer Brown's recollection of the facts. Defense witness Louis Bottoroff, an inmate in the federal institution, stated that he saw Merchant fighting with another inmate and Estes was simply watching. The weapon fell to the floor, and Estes picked it up. Bottoroff then testified that Officer Brown tackled Estes and ordered him to drop the knife.
 
 
 6
 Ben Lacy, another inmate, testified that he was present and observed the altercation. He stated that Merchant and Estes were fighting. Merchant had the knife in his hand and it dropped to the floor during the fight. When Estes picked up the knife, Officer Brown immediately threw him to the ground and took the knife away.
 
 
 7
 These contradictory versions of the events of January 13, 1990, immediately preceded the closing arguments of United States. Counsel for the United States made the following statements and characterizations during his summation.
 
 
 8
 1. "This case is about Orlando Brown. If you don't think that it doesn't take courage and integrity when you are totally unarmed to wade into an inmate that is armed, one inmate much less six inmates that were there, one inmate that has a weapon that can kill you, and fighting for 30 or 40 seconds over it, you are sadly mistaken."
 
 
 9
 2. He characterized Estes' statement to the investigator as follows: "Well, that was a lie. That's not true. Absolutely."
 
 
 10
 3. He characterized the testimony of Inmate Bottoroff in the following manner: "Mr. Estes wants [you to] trust [Bottoroff] to make one of the most important decisions in your life. You can't trust him. He's a con."
 
 
 11
 4. He similarly berated Inmate Lacy's testimony:
 
 
 12
 Once again they (the defense) wants you the make one of the most important decisions that you will ever make based on his testimony.
 
 
 13
 Why would he lie?
 
 
 14
 It is real simple. He is a career inmate and they will do something to help each other.
 
 
 15
 You think out of this whole unit with 220 something murderers, robbers, rapists, whatever, you couldn't find two people that would come in here and lie to you. Don't think that Mr. Estes wouldn't put somebody on the stand to lie because you saw it, one of those two inmates is lying and Mr. Estes put him up there to testify. Their stories are totally contradictory. He would get somebody to lie for him.
 
 
 16
 5. In his rebuttal statement, the prosecutor summed up the evidence in the following manner:
 
 
 17
 Why is Estes lying about this?
 
 
 18
 Why does he have to say that I wasn't drinking?
 
 
 19
 Why does he have to say that Merchant attack (sic) him?
 
 
 20
 Why does it (sic) say all of this stuff?
 
 
 21
 Well, it is real easy, he is guilty....
 
 
 22
 Everything in his statement was a lie.
 
 
 23
 The gravamen of these statements and their impact upon the jury forms the basis for Estes' Sixth Amendment claim on appeal.
 
 
 24
 This circuit has not adopted a per se reversible error rule for prosecutorial misconduct during closing argument. United States v. Bess, 593 F.2d 749, 756 (6th Cir.1979). The Bess court stated:
 
 
 25
 The threshold determination should be whether counsel's comments can be reasonably construed to be based on personal belief. If so, the statements should ordinarily be deemed to be error. More commonly, however, the complained-of conduct will not rise to reversible error, notably if it is not flagrant, where proof of guilt is overwhelming, where counsel does not object and/or where the trial judge steps in and admonishes the jury. Indeed, it is notable how often courts cite improper argument by a prosecutor and how seldom they reverse convictions because of it.
 
 
 26
 Bess, 593 F.2d at 756-57 (footnotes and citations omitted) (emphasis added).
 
 
 27
 Defense counsel did not object to the U.S. Attorney's closing during the trial. Estes raises this claim on appeal for the first time. Consequently, we review the prosecutor's statements for plain or fundamental error. United States v. Russell, 703 F.2d 1243, 1248 (11th Cir.1983). "Plain error consists of error which, when examined in the context of the entire case, is so obvious that failure to notice it would seriously affect the fairness, integrity and public reputation of judicial proceedings." Id.
 
 
 28
 The United States Supreme Court has recognized that an attorney for the government is in a unique position and has a responsibility above that of an ordinary party in a controversy. Berger v. United States, 295 U.S. 78 (1935). A government prosecutor may not use "improper methods calculated to produce a wrongful conviction." Id. Moreover, this circuit has recognized that a prosecutor "carries a special aura of legitimacy about him." Bess, 593 F.2d at 755. Improper arguments or summations may carry more weight with the jury than such statements by witnesses. United States v. Solivan, 937 F.2d 1146, 1150 (6th Cir.1991). Accordingly, the prosecutor should refrain from editorial comments and attempt to persuade the jury "based solely on the proof at trial and reasonable inferences that can be deduced therefrom." Bess, 593 F.2d at 753.
 
 
 29
 In this case, the counsel for the United States was indeed overzealous in his summation and may have overstepped the proper bounds of advocacy for a government prosecutor. He seemingly went beyond the proof presented at trial and argued his assessment of the evidence to the jury. However, as we noted in Bess, this is not per se reversible error. Rather, we look to other factors to determine the severity of the harm to the fairness of the proceedings at issue. Here, the defense did not object to the closing statements at trial, raising the threshold of proof on appeal to plain error. We believe that the defense has failed to show that the prosecutor's closing argument fundamentally impaired Estes' ability to obtain a fair and impartial jury verdict. Absent the conclusory nature of the prosecutor's closing arguments, the jury had sufficient evidence upon which to base its guilty verdict. Hence, no plain error has been proven, and we affirm the jury verdict.
 
 
 30
 The defense raised improper jury instructions as a second assignment of error. Again, the defense counsel failed to object to the jury instructions at trial, and we review them for plain error. United States v. Wunder, 919 F.2d 34, 35-6 (6th Cir.1990).
 
 
 31
 Estes contends that the trial court erred by instructing the jury on both actual and constructive possession theories. We find that the court instructed the jury properly with regard to each element of the crime. Perhaps it was unnecessary and superfluous to instruct on constructive possession, as the evidence related to actual possession of the weapon. However, if it was error, it was certainly harmless. We, therefore, find no error warranting reversal.
 
 
 32
 For the foregoing reasons, we AFFIRM, the jury conviction and sentence of the Honorable Robert M. McRae, United States District Judge for the Western District of Tennessee.
 
 
 
 *
 The Honorable William O. Bertelsman, Chief Judge, United States District Court for the Eastern District of Kentucky, sitting by designation
 
 
 [2]
 Evidence adduced at trial seemed to indicate that Estes may have been drinking, as well. No indication was made as to how the alcohol was obtained