John W. BYRD, Jr., Petitioner–Appellant,

v.

Terry L. COLLINS, Warden, Respondent–Appellee.

No. 96–3209.

United States Court of Appeals, Sixth Circuit.

Aug. 22, 2000.

Before: JONES, SUHRHEINRICH, and BATCHELDER, Circuit Judges.

## AMENDED ORDER

The court having received a petition for rehearing en banc, and the petition having been circulated not only to the original panel members but also to all other active judges of this court, and less than a majority of the judges having favored the suggestion, the petition for rehearing has been referred to the original panel.

The panel has further reviewed the petition for rehearing and concludes that the issues raised in the petition were fully considered upon the original submission and decision of the case. Accordingly, the petition is denied.

NATHANIEL R. JONES, Circuit Judge, dissenting from the denial of rehearing en banc, in which BOYCE F. MARTIN, Jr., Chief Judge; MERRITT, DAUGHTREY, COLE, and CLAY, Circuit Judges joined.

By either a negative vote or an abstention, a majority of this Court lets stand the panel majority's unfortunate opinion in this capital case. The panel majority concludes that the Constitution permits a prosecutor to withhold key evidence, vouch for the credibility of a key witness and import facts not in evidence into closing argument. The opinion further provides that a capital defendant is afforded constitutionally sufficient representation when his counsel fails to object or otherwise challenge material deprivations of the defendant's constitutional rights. In so concluding, the Court majority certifies a death sentence that the State of Ohio secured in contravention of the most fundamental imperatives of our constitutional order. Because this result is abhorrent to our Constitution, I respectfully dissent from the Court's denial of rehearing en banc.

The facts here are simple: with a driver waiting outside, two masked men rob a convenience store. During the robbery, one of the men senselessly murders the store's clerk. No eyewitness or other physical evidence identifies the particular robber responsible for the murder, and the only evidence distinguishing the assailants are the representations of a jailhouse "snitch." After a trial featuring the snitch's testimony, in which the jury inaccurately believed the snitch did not have any jailtime or other criminal punishment pending, the person identified by the snitch is found guilty and sentenced to death. The other two perpetrators receive life sentences.

These facts give rise primarily to four basic legal questions. First, whether the Constitution's guarantee of a fair trial and due process is satisfied when guilt is premised entirely on a purported jailhouse "confession," and the government conceals

from the jury the jailtime faced by the informant. Here, the government led the jury to believe that jailhouse snitch Ronald Armstead faced an imminent release from prison, and therefore had no reason to fabricate testimony against Byrd. Indeed, pursuant to government questioning, Armstead repeatedly told the jury that he had "no time pending," J.A. at 3864, and that his sole motivation for testifying against Byrd was his alleged outrage at the crime. In fact, Armstead faced up to fifteen years imprisonment for a parole violation, and prior to his testimony against Byrd, the state prosecutor's office lobbied strongly against an early release. Nevertheless, after his testimony, the prosecutor's office informed the state parole board that it did not object to an early release, and shortly thereafter, Armstead went home. The government knew the truth, and so did Armstead. The jury did not.

Neither the panel majority nor any other court that has addressed this case disputes that Armstead's testimony is principally responsible for Byrd's conviction. *See Byrd v. Collins,* 209 F.3d 486, 499 (6th Cir.2000) (majority opinion) ("All agree that Armstead's testimony was vitally important to the jury's determination that Petitioner was the principal offender in the aggravated murder of [victim] Monte Tewksbury."). Because the withholding of evidence seriously undermining the testimony of a central witness, and providing a specific reason to fabricate testimony, falls squarely within the constitutional prohibitions recognized in *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the Court majority erred in denying rehearing *en banc. See Byrd v. Collins,* 209 F.3d 486, 542–545 (6th Cir. 2000) (Jones, J., dissenting); *United States v. Scheer,* 168 F.3d 445, 452–53 (11th Cir. 1999) (finding a *Brady* violation when evidentiary suppression related to a key witness' testimony); *East v. Johnson,* 123 F.3d 235, 239 (5th Cir.1997) (holding that "when the withheld evidence would seriously undermine the testimony of a key witness on an essential issue or there is no

strong corroboration, the withheld evidence has been found to be material"); *Cf. Davis v. Alaska,* 415 U.S. 308, 316, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974) (asserting in the Confrontation Clause context that "[t]he partiality of a witness ... is always relevant as discrediting the witness and affecting the weight of the testimony.").

Second, this case asks whether due process allows a prosecutor to vouch for the credibility of a critical witness. Recognizing the dubiousness of predicating culpability for capital murder solely on the testimony of a jailhouse snitch, the prosecution attempted to convince the jury of the believability of Armstead's representations. During closing argument, and with a shocking disregard for the constitutional impropriety of his actions, the prosecutor pledged:

> I believe Armstead when he took the stand, and I believe you did, too....
>
> I have heard no evidence direct or circumstantial to contradict what Armstead said. I believe him and submit that you should believe him....
>
> Witnesses pay a price to testify. I never met Armstead before, but you know there's something real genuine about our people....

J.A. at 3920. Such prosecutorial testimony on the credibility of a witness is undoubtedly unconstitutional, and in a case that turns on the veracity of that witness—a jailhouse snitch no less—the error is prejudicial. *See Byrd,* 209 F.3d at 545–546 (Jones, J., dissenting); *see also United States v. Bess,* 593 F.2d 749, 753 (6th Cir.1979) (ordering new trial after prosecutor stated that he "believe[d] beyond a reasonable doubt" that the defendant committed the charged crime); *United States v. Kerr,* 981 F.2d 1050, 1053 (9th Cir.1992) (finding improper vouching when prosecutor stated, "I think [the witness] was candid. I think he is honest").

Third, this case queries whether the Due Process Clause permits a prosecutor to

speculate wildly as to facts not in evidence. Without any evidentiary predicate, the prosecutor theorized on topics as diverse as the location of the murder weapon, the whereabouts of other unrecovered key evidence, and the denouement: Byrd's motivation for murdering victim Monte Tewksbury. *See Byrd,* 209 F.3d at 546 (Jones, J., dissenting). The prosecutor informed the jury that because Byrd's boyhood home was located in the vicinity of Tewksbury's place of employment, Byrd must have seen Tewksbury "on numerous occasions," J.A. at 3912, and therefore murdered him to avoid identification. This kind of speculation transformed the trial from a sober fact-finding process to a capricious lottery. *See id.; United States v. Wiedyk,* 71 F.3d 602, 610 (6th Cir.1995) ("A prosecutor's statement in a closing argument is improper if the statement brings to the jury's attention purported facts that are not in evidence and are prejudicial."); *Bess,* 593 F.2d at 753 ("An attorney's job arguing a case before a jury is to persuade that body, based solely on the proof at trial and reasonable inferences that can be deduced therefrom."); *United States v. Gallardo–Trapero,* 185 F.3d 307, 320 (5th Cir.1999) (holding that "a prosecutor's closing argument cannot roam beyond the evidence presented during trial"). In any criminal trial, unsubstantiated theorizing as to speculated facts is inappropriate. In a capital trial, it is fatal.

Independently, these various instances of misconduct present grave questions as to the constitutional fairness of Byrd's trial, and each one, on its own accord, suffices to reverse the district court's judgment. Cumulatively, the aggregate effect of these improprieties removes any residual doubt. Attempting to distance itself from the overall effect of the prosecutors' conduct, the panel majority focuses myopically on each instance of misconduct as if it occurred in a vacuum. In this case, however, the prosecutorial misconduct is symbiotic. The *Brady* violations produced an environment in which the testimony of convicted felon and jailhouse snitch Arm-

stead could be credited; the vouching placed the State's seal of approval on Armstead's testimony; and the factual speculation created an imaginary evidentiary predicate to undergird Armstead's testimony. The combined effect of these various forms of misconduct eviscerated Byrd's right to a fair trial. *See United States v. Young,* 470 U.S. 1, 11, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985) (holding that a prosecutor's conduct must be analyzed in context to determine if defendant denied a fair trial); *United States v. Francis,* 170 F.3d 546, 552 (6th Cir.1999) (holding that the aggregate effect of the prosecutor's misconduct denied the defendant of a fair trial); *Gravley v. Mills,* 87 F.3d 779, 790 (6th Cir.1996) (granting habeas petition given numerous instances of prosecutorial misconduct).

Separate from the issues pertaining to the government's actions, this case also raises whether a capital defendant has received constitutionally effective representation when his counsel fails to challenge prejudicial prosecutorial misconduct. In the face of *Brady* violations, wrongful vouching for Armstead's credibility, and speculation as to facts not in evidence, there cannot be a reasonable norm of capital defense practice that suggests it is strategically appropriate to remain mute in the face of such an assault on the defendant's right to a fair trial. *See Gravley,* 87 F.3d at 785–86 (holding that defense counsel provided ineffective assistance by failing to object to numerous instances of prosecutorial misconduct during trial and closing argument).

All of these questions directly implicate the fundamental and non-negotiable imperative that a capital defendant receive a constitutionally fair trial before government may justifiably extinguish his life. By virtually any respectable measure of our constitutional order, that did not occur in this case. If we do not issue the writ, we at least must grant Byrd an evidentiary hearing to explore further his substantial

claims of prosecutorial misconduct. Anything less, as this Court now decrees, represents a mortal miscarriage of justice. Because I am convinced the Constitution commands more, I respectfully dissent from the denial of rehearing *en banc*.