NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0728n.06
Filed: October 5, 2006

No. 05-4002

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | SOUTHERN DISTRICT OF OHIO |
| ANTOINE L. WILSON, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

Before: COOK and MCKEAGUE, Circuit Judges; and WILHOIT, District Judge.[*]

PER CURIAM. Antoine Wilson challenges his convictions for possession with intent to distribute more than fifty grams of cocaine base in violation of 21 U.S.C. § 841(a)(1), possession with intent to distribute a measurable amount of cocaine in violation of 21 U.S.C. § 841(a)(1), and possession of a firearm and ammunition by a convicted felon in violation of 18 U.S.C. § 922(g)(1). We affirm.

I

---

[*]The Honorable Henry R. Wilhoit, Jr., United States District Judge for the Eastern District of Kentucky, sitting by designation.

Wilson's arrest stemmed from an investigation of suspected drug crimes at a Cincinnati car wash. Narcotics Agent Paul Fangman observed Rodney Bradley pull a car into the car wash and park it in front of Wilson's car. Holding a backpack, Wilson exited the car and nervously scanned the area. He put the backpack in his car and scanned the area again. Fangman testified that Wilson behaved similarly to other drug dealers Fangman had observed.

Bradley and Wilson closely checked the area and walked into the car wash. After less than a minute inside, Wilson nervously walked back to his car and moved the backpack to the trunk. He drove away, and Fangman surreptitiously followed him to a housing project in Covington, Kentucky. Fangman testified over objection that he knew drug trafficking was prevalent at that housing project. Wilson stopped several times in Covington, driving in circles to lose anyone following him.

While returning to Cincinnati, Wilson swerved suddenly without using his signal to exit the freeway. Fangman, who had previously realized Wilson's license plate lacked a validation sticker, called for a uniformed officer to stop Wilson. That officer stopped Wilson and informed him that he was driving without a validation sticker. Wilson told the officer he had the sticker in his car and stuck it to the plate. He let the officer frisk him, but after that revealed nothing illegal, he refused to consent to a search of his car. The officers called a drug-sniffing dog to the scene and, given the traffic on the road, placed Wilson in the back of the police cruiser for his safety.

The dog arrived fifteen minutes later and alerted the officers to Wilson's trunk, which they searched, finding over ninety grams of cocaine base, some powder cocaine, a digital scale, and a

loaded assault rifle. The officers also found a loaded handgun in the front of the car. They arrested Wilson, who admitted purchasing and reselling large amounts of cocaine.

At trial, the district court denied Wilson's motion to suppress the evidence against him as obtained through an unlawful search. During closing argument, the prosecutor told the jurors that they "didn't hear anybody deny" the evidence the Government presented. After the jury found Wilson guilty on all counts, he timely appealed his conviction.

II

Wilson first appeals the denial of a motion to suppress the evidence found by the drug dog. We review the district court's legal conclusions de novo and its factual findings for clear error, viewing the evidence in the light most likely to affirm the district court. *United States v. Foster*, 376 F.3d 577, 583 (6th Cir. 2004).

Wilson does not contest that his car did not have current tags, the absence of which justified the initial stop. Wilson rather argues that the officers violated his Fourth Amendment right to be free from unreasonable seizure by detaining him after the initial stop. A police officer may detain a suspect following an initial detention if he reasonably suspected criminal activity was afoot and if "the degree of intrusion was reasonably related to the scope of the situation at hand." *See United States v. Davis*, 430 F.3d 345, 353-54 (6th Cir. 2005) (citing the two-prong test of *Terry v. Ohio*, 392 U.S. 1 (1968)).

Fangman reasonably suspected that Wilson had committed a drug offense. Shortly before the stop, Fangman saw Wilson meet with a suspected drug dealer. Immediately after observing Wilson appear to transact drug business at a car wash under surveillance for illicit drug activity, Fangman followed Wilson to a housing project where drugs were commonly trafficked. Fangman reasonably suspected the backpack Wilson put first in his backseat and later in the trunk contained contraband. Combined with Wilson's erratic driving, obvious nervousness, and attempt to elude anyone who might have been following him, we hold that the officers' suspicion satisfies *Terry*'s first prong.

Wilson's fifteen-minute detention reasonably related to the scope of the stop, satisfying *Terry*'s second prong. The officers placed Wilson in the police cruiser to protect him from speeding traffic on a busy road. Wilson contends that this action escalated his detention into an arrest. We have held that detention in a cruiser does not necessarily exceed the bounds of a *Terry* stop. *See Houston v. Clark County Sheriff Deputy John Does 1-5*, 174 F.3d 809, 815 (6th Cir.1999). The drug dog arrived within fifteen minutes, less than half the time it took in *Davis*. 430 F.3d at 354. We hold that the officers did not violate the Fourth Amendment.

III

Wilson next contends that the district court improperly admitted Fangman's statement that the Covington housing project was "an area known for drug trafficking." We reject his contention that the statement was hearsay because it was not offered for the truth of the matter asserted. *United*

*States v. Aguwa*, 123 F.3d 418, 421 (6th Cir. 1997). And because the statement conveyed knowledge

Fangman acquired from experience, it fails to rank as testimonial. The district court did not abuse

its discretion.

IV

Wilson last claims that the prosecutor violated his Fifth Amendment right by commenting

on Wilson's failure to testify at trial. We review de novo such claims of prosecutorial misconduct.

*See United States v. Tarwater*, 308 F.3d 494, 510-11 (6th Cir. 2002). If the prosecutor's misconduct

was not flagrant and the judge cured any potential error, we will affirm a defendant's conviction even

if the prosecutor's comments were improper. *See United States v. Carroll*, 26 F.3d 1380, 1385-86

(6th Cir. 1994). We assume without deciding that the prosecutor improperly referred to Wilson's

failure to testify.[1]

To determine whether misconduct was flagrant, we consider four factors: "(1) whether the

statements tended to mislead the jury or prejudice the defendant; (2) whether the statements were

isolated or among a series of improper statements; (3) whether the statements were deliberately or

accidentally before the jury; and (4) the total strength of the evidence against the accused." *United

States v. Francis*, 170 F.3d 546, 549-50 (6th Cir. 1999). Given that the judge immediately

---

[1]Wilson also complains that the prosecutor improperly mentioned the "Empty Chair Defense" and the "Smoke and Mirrors Defense" during his rebuttal argument. We find these comments within acceptable bounds.

admonished the jury, we find it extremely unlikely that the prosecutor's comments improperly led the jury to consider the defendant's failure to testify. While the statement may have been deliberate, it was isolated. Finally, the police found a substantial amount of cocaine and a loaded assault rifle in Wilson's trunk, which convinces us of the strength of the evidence against Wilson. We find any putative error non-flagrant.

For non-flagrant improper conduct, we apply the three-part *Bess* test to determine whether that misconduct warrants reversal. *United States v. Bess*, 593 F.2d 749, 753-57 (6th Cir. 1979). Under the *Bess* test, we reverse a conviction for prosecutorial misconduct only if "(1) proof of defendant's guilt is not overwhelming, and (2) defense counsel objected, and (3) the trial court failed to cure the error with an admonishment to the jury." *Carroll*, 26 F.3d at 1385-86. The trial judge instructed the jury in plain and simple English not to consider Wilson's failure to testify and to use the appropriate burden of proof. Wilson thus fails to satisfy the third element of *Bess*. Even if the prosecutor's statements were improper, they do not warrant reversal.

V

We affirm Wilson's conviction.