**In re John W. BYRD, Jr., Movant.**

No. 01–3927.

United States Court of Appeals, Sixth Circuit.

Oct. 9, 2001.

### ORDER

█ A majority of the judges in regular active service have voted that the court remand this matter for the development of a factual record sufficient to permit *sua sponte* consideration of a request for leave to file a second petition for a writ of habeas corpus. The jurisdictional basis for a rehearing *sua sponte* is *Triestman v. United States*, 124 F.3d 361, 367 (2d Cir. 1997); *Krimmel v. Hopkins*, 56 F.3d 873, 874 (8th Cir.1995).

The remand for the development of a factual record is ancillary in nature to the petition for the writ of habeas corpus. A majority of the active judges has decided that a factual basis does not exist sufficient to permit the en banc court to entertain the Petitioner's request for a successive filing. We therefore issue this remand, directed to the Chief Judge of the Southern District of Ohio for appointment of a Magistrate Judge to promptly conduct an appropriate factual hearing.

The hearing should develop a record with regard to John Byrd's claim of innocence presented to the Ohio courts but on which no testimony of witnesses or evidence was taken. We direct that the scope of the factual inquiry conducted by the Magistrate Judge shall include testimony relating to matters set forth in the affidavits of John Brewer, Dan Cahill, Darryl Messer, Roger Hall and Benny Fields.

In addition, the factual inquiry shall include, but is not limited to, an examination of the following:

1. Documents prepared by the Hamilton County Prosecutor's Office and/or Hamilton County Sheriff's Department authorizing, directing or identifying Ronald Armstead, Virgil Jordan, Marvin Randolph and Robert Jones to be questioned in matters relating to the issue of innocence raised in this matter.

2. Documents prepared or received by the Hamilton County Prosecutor's office or Hamilton County Sheriff's Department or Cincinnati Police Department relating to Ronald Armstead's incarceration, testimony and parole revocation hearing and disposition.

3. Documents or reports received by the Attorney General's office or Hamilton County Prosecutor's office from the Ohio Department of Corrections or its institutions, relating to this matter.

We further direct that this matter proceed on an expedited basis with the Magistrate Judge submitting a report with factual findings and recommendations to the en banc court within 45 days from date of the appointment of the Magistrate Judge.

**IT IS ORDERED** that the matter be, and it hereby is remanded. The Magistrate Judge shall report factual findings to this court, which retains jurisdiction in the matter.

**IT IS FURTHER ORDERED** that the stay of execution currently in place remain in force, pending further order of this court.

JONES, Circuit Judge, concurring in the Order of Remand, in which DAUGHTREY, COLE, and CLAY, Circuit Judges, join.

The most gentle characterization I can offer of the dissents of Judge Boggs and Judge Suhrheinrich is that they constitute a fanciful exegesis that bears little relationship to the facts of this case or the requirements of the law. Each dissenter accuses the en banc majority of "lawless" actions or of acting without a lawful basis. Accordingly, even though I am not a member of the en banc court, as is true of Judge Suhrheinrich, with no vote on the issue at hand, as is also true of Judge Suhrheinrich, I am nevertheless compelled to write this response to correct statements and impressions conveyed by the dissents.

A reference to a statement in Judge Suhrheinrich's dissent illustrates the point. It states: "To date, Judge Jones has not written a dissent that sets forth his legal reasoning." *In re Byrd*, No. 01–3927, *order of remand*, at 596 (6th Cir. Oct. 9, 2001) (Suhrheinrich, J. dissenting). Such

a charge is intended to convey the impression that the en banc court, in reacting to my dissent, did so without the benefit of a written opinion. In fact, I circulated to the full en banc court a twenty-six page dissenting opinion, that set forth, in a comprehensive manner, the legal justification for the action the en banc court decided to take. I should note that part of the opinion included a lengthy discussion of the jurisdictional basis for the court's actions. In light of the dissents, I reiterate the portion of my dissent that relates to the jurisdiction of the court to remand this case in order to develop a factual record, a record the state courts refused to make.

Notwithstanding the obfuscation and manipulation of the issues by the dissenters, what compelled the en banc court to issue the Order of Remand is simple. When a habeas petitioner wishes to file in the district court a second or successive habeas petition, AEDPA requires that he first obtain authorization from the federal court of appeals.[1] Congress, therefore, vests in the appeals court a statutory duty to determine whether to authorize a second bite at the habeas apple. The statute then lays out various requirements the petitioner must satisfy before the court can certify the second or successive petition.[2] If the petitioner is unable to satisfy the statutory requirements of the AEDPA, the court of appeals may yet authorize a second or successive filing if the court deems that this is necessary to prevent a miscarriage of justice.[3] There is no disagreement on the court that Petitioner Byrd does not satisfy the statutory filing requirements of the AEDPA. However, a majority of judges in active service have agreed that the court is without an adequate factual record to determine whether a second filing is warranted under the miscarriage of justice exception. Therefore, a majority of the en banc court has remanded the case for a hearing on the evidence supporting Byrd's claim that he is entitled to file a second petition under the statutory exception.

Byrd has presented to this court the confession of an accomplice, John Brewer, that it was Brewer, not Byrd, who murdered Monte Tewksbury. The Order of Remand was compelled by the fact that a majority of active judges, comparing the

**1.** The statute reads: "Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application." 28. U.S.C. § 2244(b)(3)(A).

**2.** The statute further provides that: "The court of appeals may authorize the filing of a second or successive application only if it determines that the application makes a prima facie showing that the application satisfies the requirements of this subsection." 28 U.S.C. § 2244(b)(3)(C). Specifically, the petitioner's claim shall be dismissed under § 2244(b) unless he demonstrates that his claim "could not have been discovered previously through the exercise of due diligence," or that the claim "relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court,

that was previously unavailable." 28 U.S.C. § 2244(2)(A) & (B).

**3.** The actual innocence/miscarriage of justice exception is articulated in *Schlup v. Delo,* 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995), in which the court held that a prisoner who fails to satisfy AEDPA filing requirements for a successive habeas petition "may obtain review of his constitutional claims only if he falls within the 'narrow class of cases ... implicating a fundamental miscarriage of justice.'" *Id.* at 314–15, 115 S.Ct. 851. *See also, McCleskey v. Zant,* 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991), holding that "[i]f a petitioner cannot show cause, the failure to raise the claim in an earlier petition may nonetheless be excused if he or she can show that a fundamental miscarriage of justice would result from the failure to entertain the claim." *Id.* at 494–95, 111 S.Ct. 1454.

statements in the confession to supporting facts in the record, agree that this evidence of actual innocence potentially satisfies the miscarriage of justice exception and likely warrants a second habeas action. The impediment to the court so ruling was the fact that the Ohio courts have repeatedly refused every request for discovery and an evidentiary hearing on the Brewer confession.[4] Obviously, the lack of a factual record on such potentially exculpatory evidence was no impediment for the panel majority. The panel, over my dissent, wrongly refused Byrd's request for authorization to file a second habeas petition, turning a blind eye to serious gaps in the record. The centerpiece of the dissents to the Order of Remand is the argument that the en banc court was powerless to order a rehearing to correct the panel's erroneous decision.

The view that the en banc court lacked jurisdiction to consider the panel majority's adverse decision reads into the AEDPA a meaning the plain text of the statute does not support. The statute prohibits an authorization decision from being "the subject of a petition for rehearing." 28 U.S.C. § 2244(b)(3)(E). This court, in *In re King*, 190 F.3d 479 (6th Cir.1999) extended the reach of the statute to preclude not only petitions for rehearing but also petitions for rehearing *en banc*.[5] Nevertheless, AEDPA did not alter the authority of the *en banc* court to order a rehearing on its own motion. In *Triestman v. United States*, 124 F.3d 361 (2d Cir.1997), the Second Circuit observed that the federal courts of appeals retain the power to order a rehearing *sua sponte*.

"[N]otwithstanding the restrictions on appealability in § 2244(b)(3)(E), this court has the authority to order a rehearing sua sponte. It is well-established that a court of appeals is entitled both to reconsider a prior decision sua sponte ... and to order a rehearing sua sponte (citations omitted). By mandating that the initial decision of the court of appeals 'shall not be the subject of a *petition* for rehearing' (emphasis in original), § 2244(b)(3)(E) provides only that a disappointed litigant may not ask the court to reconsider its certification decision. By its plain terms, it does not purport to limit the court's own power to review its decisions or to undertake a rehearing."

*Id.* at 367. In dissent, Judge Boggs argues that notwithstanding the emphatic language of the court in *Triestman*, the case is not on point because it involved a sua sponte order of a three-judge panel rather than, as in Byrd's case, the full en

---

4. In my statement, circulated to the full en banc court, I set forth the reasons why Petitioner Byrd is entitled to an evidentiary hearing under § 2254(e)(2). That section provides that "[i]f the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing" unless the prisoner meets various statutory exceptions.

Again, I observe that the references to evidence Byrd withheld from his first federal habeas petition, while they serve to explain why he cannot show cause for abuse of the writ, are unimportant for the purposes of whether he is entitled to a hearing under § 2254(e)(2). The all-important observation is that, once it was in his possession, Byrd made every attempt to come forward with his evidence of actual innocence, i.e., the Brewer confession, in his state post-conviction proceedings. The record is clear: the state trial and appellate courts refused Byrd's every request for discovery and an evidentiary hearing on his claim of actual innocence.

5. Specifically, the court held that "once a panel of this court grants or denies an individual permission to file a second or successive petition in the district court, § 2244(b)(3)(E) prohibits any party from seeking further review of the panel's decision, either from the original panel or from the en banc court." *In re King*, 190 F.3d at 479.

banc court. *In re Byrd*, No. 01–3927, *order of remand*, 269 F.3d 585, 594 (6th Cir.2001) (Boggs, J. dissenting). Remarkable! This fact is hardly a basis on which to distinguish *Triestman*. Rather, the fact that a majority of active judges agrees that a rehearing is necessary serves only to reinforce the fact that the court acts completely within the law.

The Second Circuit is not alone in this interpretation of the statute. In *United States v. Lorentsen*, 106 F.3d 278 (1997), the Ninth Circuit adopted the view of the statute articulated in *King* that AEDPA bars petitions for rehearing en banc. One year later, the Ninth Circuit decided *Thompson v. Calderon*, 151 F.3d 918 (1998), in which the court followed the *Triestman* analysis that "the language [of § 2244(b)(3)(E) ] does not preclude sua sponte review by an en banc court. It merely precludes the parties from seeking a rehearing." *Id.* at 922. The Ninth Circuit had no difficulty rejecting the flawed analysis advocated in the dissents. Neither did a majority of active judges on this court. Indeed, even the Supreme Court has acknowledged this distinction when interpreting an analogous section of the statute. The Supreme Court in *Calderon v. Thompson*, 523 U.S. 538, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998), examined the language of § 2244(b) which limits the authority of the federal courts to entertain abusive or successive petitions.[6] The Court did not hesitate to affirm the view that the federal courts retain the authority to hear even abusive or successive applications sua sponte. "As a textual matter, § 2244(b) applies only where the court acts pursuant to a prisoner's application." *Calderon*, 523 U.S. at 554, 118 S.Ct. 1489.

To be sure, § 2244(b) does not permit the court to entertain a petition for rehearing en banc under the guise of acting sua sponte. The question is whether the court, though it purports to act sua sponte, entertains the merits of the second habeas petition. If the court were to grant some form of substantive habeas relief or take other action on the basis of new claims or evidence in the second habeas petition, the court would subvert AEDPA by granting relief on the basis of claims that failed to satisfy the requirements of § 2244(b)(2). The Court in *Calderon*, held that this is impermissible.

> "[If] the court considers new claims or evidence presented *in a successive application for habeas relief,* it is proper to regard the court's action as based on that application. In these cases, [AEDPA] applies irrespective of whether the court characterizes the action as sua sponte." (emphasis added)

*Id.* at 554, 118 S.Ct. 1489. At the outset, there is simply no logical way one can think of the § 2244(b)(3)(A) request for authorization itself as a successive application for habeas relief. Nevertheless, Judge Boggs manages to do just that. In his dissent, Judge Boggs writes that "[Byrd] filed a document that does not admit to being a second or successive habeas. The panel ruled that it was." *In re Byrd*, No. 01–3927, order of remand, 269 F.3d at 594 (6th Cir.2001) (Boggs, J. dissenting). No, it did not. The panel decided that it was appropriate to treat Petitioner Byrd's "Motion [to] Determine Whether § 2244 of AEDPA Applies in His Case" as a request for *leave* to file a

---

**6.** Section 2244(b)(1) provides: "A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed." Likewise, § 2244(b)(2) provides:

"A claim presented in a second or successive application under section 2254 that was not presented in a prior application shall be dismissed" unless various exceptions are applicable. 28 U.S.C. § 2244(b).

second petition in the district court.[7] Judge Boggs' failure to properly identify the motion before the court is critically important because, as *Calderon* teaches, the lawfulness of the court's sua sponte order turns on whether the Order of Remand was based on new claims or evidence in Byrd's second habeas petition. That the remand does not rest on Byrd's second habeas action is obvious from the simple fact that, at present, the court has not granted leave to file a second habeas petition. As a result, none of the substantive claims for habeas relief, including a *Massiah* claim regarding Byrd's Sixth Amendment right to counsel, a *Brady* claim regarding the deliberate use of false evidence against him, and a claim of ineffective assistance of counsel, were properly before the court under § 2244(b)(3)(A).

Even so, a keen eye might observe that Byrd's evidence of actual innocence forms the basis of both his request for authorization under § 2244(b)(3)(A) and the actual habeas petition he seeks to file. It is indeed true that the Brewer affidavits, in which Brewer confesses to the murder, appear in both instruments, and the en banc court did well to consider the importance of the confession as a basis for the Order of Remand. However, the remand remains on the safe side of the distinction drawn in *Calderon* because in the request for authorization, the actual innocence claim does not function like a substantive claim for relief as in *Herrera v. Collins*, 506 U.S. 390, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993).[8] Instead, it functions as a "gateway through which a habeas petition-

er must pass to have his otherwise barred constitutional claim heard on the merits." *Schlup v. Delo*, 513 U.S. 298, 315, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995), i.e., it functions to satisfy the miscarriage of justice exception to the AEDPA filing requirements. The court does not act on the substantive merits of claims in the habeas petition, therefore, the Order of Remand is consistent with the rule in *Calderon*.

I conclude with one final observation on the points raised in the dissents. The key to understanding the legitimacy of the Order of Remand is to remain cognizant of the two roles the court must fulfill under AEDPA and in habeas matters generally. With AEDPA, Congress creates for the court a statutory duty to refuse or permit the filing of successive habeas petitions in the district courts. Whether the court has properly discharged its duty under AEDPA remains a hotly contested issue among some members of the court. I submit that the just and lawful course of action in this case involving Petitioner Byrd becomes increasingly clear when the court is mindful that its duties under AEDPA are designed to facilitate the court's larger responsibility to see to it that the rights of citizens under the Federal Constitution are not disparaged in state criminal proceedings. Were the dissenters mindful of this basic role of the federal courts in habeas matters, they would be uncomfortable with the fact that the Petitioner has been, at every turn, refused an opportunity to test in open court what a majority of active

7. In its September 11, 2001 Revised Order, the panel majority states that "[h]owever cast, Byrd is seeking the permission required by 28 U.S.C. § 2244(b)(3)(A) to file a second habeas petition." Order filed September 11, 2001 in Case No. 01–3927, 269 F.3d 561, 563, n. 1.

8. The Supreme Court recognized in *Herrera* that a prisoner's claim of actual innocence

functions as a substantive constitutional claim for habeas relief. The Court noted that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim." *Id.* at 417, 113 S.Ct. 853.

judges on this court agrees is potentially exculpatory evidence of actual innocence.

The response from the dissenters is that Byrd has shuttled back and forth between the state and federal courts for some eighteen years. There is no disagreement on the court that he has. But, this fact is important only insofar as it explains why Byrd is unable to show cause for failing to raise his claim of actual innocence in his first federal habeas petition. It means nothing with respect to whether the Brewer confession is persuasive evidence of actual innocence that would entitle Byrd to a second opportunity to make his claim for habeas relief. The state courts of Ohio wasted an opportunity to bring all interested parties closer to fairness and finality in this matter by refusing out of hand and with no justifiable rationale Byrd's request for discovery and a hearing on this specific claim. The en banc court agrees with the view in *Burris v. Parke*, 116 F.3d 256 (7th Cir.1997) that in these circumstances, a federal court does well when it refuses to rubber-stamp such inadequate proceedings in the state court on a habeas claim. Otherwise, "a state could insulate its decisions from collateral attack in federal court by refusing to grant evidentiary hearings in its own courts." *Id.* at 259.

Notwithstanding the assertion of Judge Suhrheinrich, the en banc court is no more interested in obstructing the lawful imposition of the death penalty in this Circuit than is Judge Suhrheinrich in curtailing the rights of habeas petitioners in the federal courts. *In re Byrd*, No. 01–3927, *order of remand*, at 596 (6th Cir. Oct. 9, 2001) (Suhrheinrich, J. dissenting). We differ, apparently, with regard to the means that are necessary to fulfill our statutory and constitutional responsibilities as a federal court entertaining a habeas matter. The Order of Remand reflects the manifest resolve on the part of a majority of active judges on this court to discharge these duties to the fullest.

COLE, Circuit Judge, concurring in the Order of Remand, in which JONES, DAUGHTREY, MOORE, and CLAY, Circuit Judges, join.

I concur in the decision of this Court to join the Second and Ninth Circuits in holding that an en banc court's authority to vacate *sua sponte* the decision of a three-judge panel is not precluded by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). *See Triestman v. United States*, 124 F.3d 361, 367 (2nd Cir.1997)("[N]otwithstanding the restrictions on appealability in § 2244(b)(3)(E), this court has the authority to order a rehearing *sua sponte*"); *Thompson v. Calderon*, 151 F.3d 918, 922 (9th Cir.1998)(en banc)("the language [of 2244(b)(3)(E) ] does not preclude *sua sponte* review by an en banc court. It merely precludes the parties from seeking a rehearing.") For the reasons set forth below, this Court's decision is entirely consistent with the statutory text, legislative aims, and constitutional boundaries of AEDPA.

### A.

AEDPA, in its relevant portions, provides that "[t]he grant or denial of an authorization by a court of appeals to file a second or successive application shall not be appealable and shall not be the subject of a petition for rehearing or for a writ of certiorari." 28 U.S.C. § 2244(b)(3)(E)(emphasis added). While this section clearly prohibits a petitioner from requesting rehearing, nothing in its text bars a federal appellate court from rehearing a matter en banc upon its own motion. *See Calderon v. Thompson*, 523 U.S. 538, 554, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998)("As a textual matter, § 2244(b) applies only where the court acts pursuant to a prisoner's 'appli-

cation'[1].") Thus, the statute bars petitions for rehearing, not rehearing *per se*. Indeed, the conspicuous absence of any reference to en banc rehearings in this section as opposed to other sections of AEDPA, e.g. 28 U.S.C. § 2266(b)(5)(B)(i), provides further support for the notion that rehearing en banc *sua sponte* is not contemplated by this section. *See Rodriguez v. United States*, 480 U.S. 522, 525, 107 S.Ct. 1391, 94 L.Ed.2d 533 (1987)("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in its conclusion.")(internal quotations omitted); *See also* Liebman and Hertz, Federal Habeas Corpus Practice and Procedure § 28.3d 1194–5 fn. 119. As a matter of AEDPA's text, the decision of a federal appellate court to grant a rehearing *sua sponte* is clearly not prohibited by the statute.

Moreover, en banc review by this Court on its own motion is also consistent with the primary aims of AEDPA. The Supreme Court, in upholding the constitutionality of AEDPA, has construed the requirements of 2244(b) to be a "gatekeeping" feature, one which prohibits successive, potentially baseless, applications by petitioners. *Felker v. Turpin*, 518 U.S. 651, 656–57, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996)(28 U.S.C. § 2244 "concern[s] second or successive habeas corpus applications by state prisoners.") The statute thus is directed against the actions of petitioners and assigns this Court the role of gatekeeper against petitioners' successive petitions. Put simply,

we are charged with ensuring that only potentially meritorious petitions are accorded review. By acting *on its own motion* en banc, this Court has not thwarted this gatekeeping purpose. We have not entertained successive petitions on the part of petitioner in this case and the underlying purposes behind this section remain unscathed.

This Court's authority to act on its own motion is also not precluded by our decision in *In Re King*, 190 F.3d 479 (6th Cir.1999)(en banc). There, this Court held that a petitioner's motion under § 2244(b)(3)(A) for rehearing by an en banc court is barred under § 2244(b)(3)(E). *Id.* at 482. The Court concluded that petitioner's motion could not be reheard en banc as a matter of AEDPA's statutory language and legislative intent, as 2244(b)(3)(E) clearly prohibits a 'petition for rehearing' and because the purpose of the statute is to limit requests for review by petitioners. *Id.* The crux of the *King* decision, however, was not that the decision of the three-judge panel could not be reheard en banc, but rather that the petitioner was precluded from *requesting* such a rehearing. *Id.* Here, there is no petition of this kind before the Court. Instead, we are vacating the panel decision of our own accord.

## B.

Any reading of AEDPA that precludes this Court's ability to review en banc decisions of a three-judge panel would unduly encroach upon the internal procedures of this Court. The power of an en banc court

---

1. The statute makes a distinction between an "application" and a "motion." *See* 28 U.S.C. § 2244(b)(3)(A) and 28 U.S.C. § 2244(b)(3)(E). An "application" is essentially a habeas corpus *petition. See* Liebman and Hertz, Federal Corpus Practice and Procedure 28.3d § 1992. Here, the Court is act-

ing pursuant to its authority to rehear matters en banc *sua sponte*. Regardless, there is presently no application before this Court; we are vacating the decision of the three-judge panel based upon Petitioner's motion under § 2244(b)(3)(A), seeking authorization to file a successive habeas petition.

to review its own panel decisions *sua sponte* is inherent to its function as a reviewing court. *See Irving v. U.S.*, 162 F.3d 154, 161 (1st. Cir.1998)("The authority to overrule the decision of a prior panel in the same case flows logically from the error-correcting function of the full court.") In granting federal appellate courts the ability to review their own decisions en banc, Congress was deliberately broad. The operative statute, 28 U.S.C. § 46(c), requires only that "rehearing before the court in banc [sic] is ordered by a majority of the circuit judges of the circuit who are in regular active service." The Supreme Court has interpreted § 46(c) to accord federal appellate courts extensive rule-making authority with regards to reviewing matters en banc. *See Western Pacific R. Corp. v. Western Pacific R. Co.*, 345 U.S. 247, 260, 73 S.Ct. 656, 97 L.Ed. 986 (1953)("[28 U.S.C. § 46(c) ] vests in the court the power to order rehearings en banc. It goes no further. It neither forbids nor requires each active member of a Court of Appeals to entertain each petition for a hearing or rehearing en banc. *The court is left free to devise its own administrative machinery to provide the means whereby a majority may order such a hearing.*")(emphasis added). Furthermore, the Supreme Court has determined that the process by which a federal appellate court decides to rehear a matter en banc is inherently internal, beyond the review of litigants or even the Supreme Court itself. *See Shenker v. Baltimore & Ohio Railroad Company*, 374 U.S. 1, 5, 83 S.Ct. 1667, 10 L.Ed.2d 709 (1963)("the rights of the litigant go no farther than the right to know the administrative machinery that will be followed...for this Court to hold otherwise would involve it unnecessarily in the internal administration of the Courts of Appeal.") Moreover, Congress has in particular avoided interfering with an en banc court's power to rehear matters

*sua sponte. See* Advisory Committee Notes to F.R.A.P. Rule 35 (Rule that delineates standards for determining when a rehearing en banc may be ordered "does not affect the power of a court of appeals to initiate in banc [sic] hearings *sua sponte.*")

Given the extent of power granted to this Court in determining whether to review a decision of a panel en banc, any attempt by Congress to abrogate this authority would likely run afoul of the Separation of Powers Doctrine. *See Miller v. French*, 530 U.S. 327, 341, 120 S.Ct. 2246, 147 L.Ed.2d 326 (2000)("the Constitution prohibits one branch from encroaching on the central prerogatives of another.") This Court avoids this issue by properly according § 2244(b)(3)(E) sufficiently narrow construction so as to preclude any "serious doubts of [its] [ ]constitutionality." *International Association of Machinists v. Street*, 367 U.S. 740, 749, 81 S.Ct. 1784, 6 L.Ed.2d 1141 (1961). *See also Hadix v. Johnson*, 144 F.3d 925, 938 (6th Cir. 1998)(rev'd on other grounds)(statutes should be construed "in a manner that renders the statute constitutionally valid.")

Even assuming *arguendo* that Congress may, within its Article I powers, alter this Court's power to review its own decisions upon its own motion, it must do so explicitly. In the absence of express language removing federal court review, a statute presumptively permits such review. *See Henderson v. INS*, 157 F.3d 106, 119 (2nd. Cir.1998)(discussing "the well-accepted rule of statutory construction that repeals by implication of jurisdictional statutes (and particularly of the habeas statutes) are disfavored ... [and] the presumption [is] in favor of judicial review.") *See also Felker v. Turpin*, 518 U.S. 651, 660, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996)(Congress may not remove the Court's habeas power implicitly); *Ex Parte · Yerger*, 8

Wall. 85, 75 U.S. 85, 105, 19 L.Ed. 332 (1868)(same). Here, Congress has not explicitly removed the ability of a federal appellate court to review en banc a panel decision *sua sponte*. This power thus is to remain unfettered, and has been properly exercised by this Court.

For the foregoing reasons, I concur in the en banc order of this Court.

BOGGS, Circuit Judge, dissenting, in which SUHRHEINRICH and BATCHELDER, Circuit Judges, join.

Although some have attacked the very notion of referring to death penalty litigation as involving characteristics of a game, with tactics, moves, and rules, *see O'Guinn v. Dutton*, 88 F.3d 1409, 1413 n. 1 (6th Cir.1996) (Merritt, J. concurring), the broad definitions used in the study of "game theory," and in legal courses on the subject, certainly apply. The condemned in almost all cases seeks to avoid allowing the legal system to reach a condition of finality, despite the very strong value that finality has, even in a death penalty case. *See McCleskey v. Zant*, 499 U.S. 467, 492, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).

The state almost always seeks finality— either it will succeed in carrying out the mandates of the state legal system, or it can at least move on to some other case.

All well and good. The system provides many pathways of appeal, reconsideration and contemplation. But when federal lower courts are involved, under current statutes, upheld by the Supreme Court, it all comes down to Section 2254—statutory habeas corpus. *See Felker v. Turpin*, 518 U.S. 651, 662, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996). *See also* 28 U.S.C. § 2244(b)(3)(E).

The Supreme Court specifically and unanimously upheld this scheme—in *Felker v. Turpin* it upheld all the restrictions on habeas contained in Section 2254 and AEDPA, leaving only the original writ of habeas to the Supreme Court as the avenue of the "great writ" that may not be suspended, except in cases of insurrection. *Id.* at 662–65, 116 S.Ct. 2333.

So, to avoid finality, a prisoner must follow Section 2254. It gives him a full and fair habeas hearing. Byrd has had that, from 1994 to 2000. This court considered the matter, issued an opinion, that opinion was subject to a petition for en banc rehearing, and though narrowly, Byrd did not succeed. *Byrd v. Collins*, 209 F.3d 486, *rehearing denied*, No. 96–3202, *amended en banc order* (6th Cir. Aug. 22, 2000). The Supreme Court denied certiorari. *Byrd v. Collins*, 531 U.S. 1082, 121 S.Ct. 786, 148 L.Ed.2d 682 (2001).

At that point, the system clearly gives him two, and only two, options. He may move this court for permission to file a second or successive habeas. If granted that permission, he files his habeas in district court and proceeds. If his motion is denied, the denial is not subject to rehearing. Or, if he contends that under pre-AEDPA law he does not need such permission, he can file a habeas in district court, and see if the district court agrees with him. In either case, the case continues on the road to finality. Byrd has chosen to do neither. He filed a document that does not admit to being a second or successive habeas. The panel ruled that it was.

In a somewhat similar, possibly pre-AEDPA, case, Robert Coe's filing in *district* court to raise a *Ford* competency issue was held by the panel to be a pre-AEDPA petition that the district court was permitted to deal with. The district court ruled promptly, and the system was permitted to operate. *See Coe v. Bell*, 209 F.3d 815 (6th Cir.2000). Byrd could have

filed in district court, if he thought AED-PA doesn't apply, but he didn't.

What Byrd did instead was to file a petition for rehearing en banc of the denial. This was clearly not permitted. Nevertheless, this court issued an order, based on motions not made known to some members of the court, ordering in advance that such a petition be filed and submitted to the court. See Order filed September 11, 2001 in Case No. 01–3927, 269 F.3d 561. Such a petition was filed, and submitted to the court. At the request of a member of the panel, a poll on the granting of the en banc petition was ordered, and a voting ballot issued on Sept. 27.

However, on September 28, the proposition on which the court was asked to vote was changed, apparently, to be a request "to determine whether the en banc court shall, *sua sponte* " not re-hear the action of the panel and grant permission for a second or successive habeas petition, but rather to "remand" the case to the district court "for the development of a factual record sufficient to permit a consideration of a petition to file a second petition." A majority of the active judges of the court have now supported this proposition. This action has no conceivable connection to Section 2254 jurisprudence, whatsoever.

Indeed, Byrd perhaps gives the game away in his most recent filing where he states that "this Court sits less as an appellate court and more as a fact-finder on the actual innocence claim." *See* "Motion For Leave to File a Motion Requesting Referral of His Case to a Special Master Pursuant to FRAP 48," at 8, filed September 26, 2001. Truer words were never spoken, nor words that more accurately represent how the court is failing to apply Section 2254. Byrd wants us (and apparently a majority of the court agrees) to be involved in a fact-finding process, as to matters willfully withheld from the court

for over a decade, or now brought up at the last minute, when the persons involved were fully available to the defense at trial, at state habeas, and at federal habeas and never brought forth until now.

Quite simply, the claim of actual innocence, for habeas purposes, does not mean that a judge would have ruled differently had he been on the jury; or on the state bench; or on the state or federal habeas courts; it has to mean that a particular legal standard, set down in the statutes and cases we are sworn to uphold, has been met. *See Herrera v. Collins,* 506 U.S. 390, 400–01, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993).

There are a variety of ways that Byrd could have attempted to pursue those issues under the rules. He has chosen not to.

For every one of those avenues leads to finality. Instead, he, with the approval of this court, has concocted a procedure unknown to the law, where this court takes control of matters not properly before it, "remands" them to a court where they have never been, and commands that the matters then be returned to this court, in 45 days or so, for this court, only then, to consider whether permission to file a second habeas should be granted by the full court.

Subsequent to the close of the voting on the proposition stated above, *see supra* p. 594, the court has prepared a very extensive order of "remand" that only adds to the astonishing series of irregularities that have occurred in this case. First, the cited cases of *Triestman* and *Krimmel* provide no support for the ability of the entire court to "rehear" the actions of a panel with respect to a motion for permission to file a second or successive habeas petition. *See Triestman v. United States,* 124 F.3d 361 (2d Cir.1997); *Krimmel v. Hopkins,* 56

F.3d 873 (8th Cir.1995). Neither case involved the full court at all; both involved a rehearing by a panel of its own decisions. *Krimmel* was pre-AEDPA and involved a conventional appeal of a denial of a first habeas. *Triestman* specifically noted that § 2255 requires that "a second or successive habeas must be certified ... by a *panel* of the appropriate court of appeals." *Triestman*, 124 F.3d at 365 (emphasis added) (quoting 28 U.S.C. § 2255).

This obviously is not the case here.

Next, the court's purported "remand" is not "ancillary to the petition for a writ of habeas corpus," because there is no petition until a panel of this court grants permission to file it—when it would be filed in the district court. What the court's order does is neatly avoid the conventional habeas jurisdiction of the district court, where such a petition, if and when permitted to be filed, would be directed to the judge who has dealt with the earlier habeas petition by Byrd, or would be dealt with otherwise according to local court rules. Instead, our court in effect grants Byrd's undealt-with motion for a special master. If we can direct a particular federal judge to appoint a particular type of official to advise us, we could just as easily appoint a law school dean, the UN Commission on Human Rights, or Amnesty International to conduct such a proceeding.

Finally, under the statutes, we are simply not authorized to do anything with a motion to file a second or successive petition other than to grant it, or deny it. We cannot shirk that duty or turn it over to others to conduct "fact-finding" that we will apparently deal with in some capacity other than that assigned us by our jurisdictional statutes.

This activity has spun so far out of the authorized sequence that it may even be doubted whether the Supreme Court may be thought to have jurisdiction to stay it at this point; the answer to that question will have to await the event, should such a request be filed. What is certain is that we have embarked on a path that, if permitted, creates the ability for every appellate panel and full court to explode every limitation apparently thought, by both Congress and the Supreme Court, to be contained within AEDPA.

The court's actions are lawless, and I therefore respectfully dissent.

SUHRHEINRICH, Circuit Judge, dissenting from the Order of Remand, in which BATCHELDER, Circuit Judge, joins.

In the latest twist in this case, a majority of the En Banc Court has now voted to *sua sponte* remand this case for "for the development of a factual record sufficient to permit a consideration of a petition to file a second habeas corpus petition," a "procedure" which is not found in the AEDPA. While that procedure is without legal support, the En Banc Court continues what this writer feels is a lawless course of action.

It is important that we retrace several critical steps that put us in this predicament. First, on the evening of September 10, 2001, there is a secret vote by a majority of the En Banc Court to grant Judge Jones thirty days to prepare a dissent to the original panel decision denying Byrd permission to file a second habeas petition. To date, Judge Jones has not written a dissent that sets forth his legal reasoning.

Next, on September 12, 2001, Byrd files a petition for rehearing en banc, raising two issues: First, "Does the En Banc Court have jurisdiction to review the panel's denial of Byrd's application to file a second habeas petition?" Second, "Assuming pre-AEDPA law applies, has Byrd provided clear and convincing evidence of his

actual innocence such that his abuse of the writ should be excused and he should be allowed to file a second petition?" These questions have not yet been answered, nor has there been any indication by the En Banc Court that it is even going to entertain the petition.

On September 26, 2001, Byrd files a "Motion For Leave to File a Motion Requesting Referral of His Case to a Special Master Pursuant to FRAP 48." It states in pertinent part that "this Court sits less as an appellate court and more as a factfinder on the actual innocence claim." Not only did Byrd's attorney jump the gun in filing this motion, but he is clairvoyant because a majority of the En Banc Court thereafter adopts his suggestion in their "sua sponte" remand order. On September 27, 2001, at the request of Judge Jones, a poll for granting of the en banc petition was made, and a voting ballot was issued. On September 28, 2001, Judge Jones files a "clarification of his request for en banc vote," where he advocates that the En Banc Court should *"sua sponte* remand for the development of a factual record sufficient to permit a consideration of a petition to file a second habeas corpus petition."

Instead of ruling on Byrd's petition for rehearing and openly assuming control of this case, on October 4, 2001, a majority of the En Banc Court agrees to the *sua sponte* remand for fact finding. So as of today, the En Banc Court has fired the panel and taken over this case *sua sponte.* At the same time, they have not adopted a dissent to the panel decision, as there has been none, nor have they given the panel majority any guidance as to how they misinterpreted the law.

The majority makes no mention of the fact that the so-called "actual innocence"

affidavit of co-defendant John Brewer has been available since 1989 and has been hidden from the courts by Byrd's attorneys. It is hard to determine the reason for these attorneys' unethical behavior; if indeed Byrd is "innocent," why put the state courts, and the federal judiciary, including the United States Supreme Court, through years of litigation, when presumably the En Banc Court would find him innocent? Furthermore, why put Byrd through nearly eighteen years of torment as to whether he will live or die? I think the answer is clear; and that is, Byrd's attorney never thought that anyone would give credence to a criminal who testified one way under oath, in a trial, and then testified another way in an affidavit. This does not prove Byrd's innocence, it only proves that Brewer is a liar.[1]

The En Banc Court labels the "fact finding" mission "ancillary," when indeed it is the essence of his claim and goes directly to the question of whether Byrd should be allowed to file a second habeas petition. What makes this more outrageous is the majority's determination that the factual inquiry should contain the very relief that Byrd's attorneys failed to obtain in his first federal habeas petition, *see Byrd v. Collins,* 209 F.3d 486 (6th Cir.2000), and which incidentally, failed to gain rehearing by this En Banc Court, who turned down Byrd's request for rehearing en banc. *See Byrd v. Collins,* 227 F.3d 756, *amended en banc order* (6th Cir.2000). And the United States Supreme Court denied certiorari. *See Byrd v. Collins,* 531 U.S. 1082, 121 S.Ct. 786, 148 L.Ed.2d 682 (2001).

The uncharted course of this case continues in that the matter is sent not to the United States District Judge to whom Byrd's first federal habeas petition was

---

1. *See United States v. Chambers,* 944 F.2d 1253, 1264 (6th Cir.1991) ("Recanting affidavits and witnesses are viewed with extreme suspicion.").

assigned, but to an appointed Magistrate Judge (presumably one who will do the bidding of the En Banc Court) who is yet to be named. Under what procedure or rule of law allows the En Banc Court to interfere with the blind draw assignment of the United States District Judge to whom it was assigned?[2]

In my view, as I read their order, which I attach to my dissent for publication, after the fact finding by the hand-picked magistrate, the case is not returned to the three-member panel, but instead is returned to five members of a nine-member court that is the so-called majority of the En Banc Court.[3] I take it then that the En Banc Court will decide if there are grounds for a second petition. One might wonder how they pull off this sleight-of-hand as the statute requires a three-judge panel of the court of appeals to decide this issue. *See* 28 U.S.C. § 2244(b)(3)(B). And that decision is nonappealable. *See* 28 U.S.C. § 2244(b)(3)(E).

What has happened, unlike any habeas corpus case ever to come before this Court, is that the En Banc Court will not act as a reviewing body of the panel, but will become the panel itself. It would be far more courageous, far more intellectually honest, if the En Banc Court would hold as matter of policy that the Sixth Circuit will not uphold the death penalty.

This entire unprecedented, unusual, and in my mind, illegal process has all resulted from one Judge asking for a thirty-day extension in the execution of John Byrd.

All of the orders, previous decisions by the En Banc Court, and eighteen years of due process for Byrd have been thrown out the window, and a majority of this En Banc Court has ordered a fact finding on the very thing Judge Jones advocated in his dissent from the denial of Byrd's first federal habeas petition. *See Byrd v. Collins,* 209 F.3d 486, 542–52 (Jones, J. dissenting). Once again, it would be much more intellectually honest and legal if this Court would merely indicate that this En Banc Court is overruling the past En Banc Court and that the law of the case has no meaning.

While it is clear that I am out-of-step with the new jurisprudence of the Sixth Circuit, and have no understanding of that law, I will attempt to set down my legal reasoning for the reader to see how outmoded and "injudicious" my legal interpretation is. I will address what I believe are the two issues properly before the En Banc Court.

### The En Banc Court Has No Jurisdiction

The statute says:

The grant or denial of an authorization by a court of appeals to file a second or successive application *shall not* be appealable and *shall not* be subject to a petition for rehearing or for a writ of certiorari.

28 U.S.C. § 2244(b)(3)(E) (emphasis added). As we observed in the unanimous en

---

**2.** If this matter is not going back to the original panel, presumably the En Banc Court thinks the panel is tainted in some way. The En Banc Court must also believe that the United States District Judge is tainted as well, because they have assigned the matter to the Chief Judge of the Southern District of Ohio for appointment of a Magistrate Judge, thereby taking the case away from the district judge who has handled this matter since 1994. Once again, there is no indication as to what case or statute permits this procedure.

**3.** If Judge Jones's concurrence in the Order of Remand is correct, would this matter not come back to the original panel, or has the En Ban Court taken complete control of the case and there will be no three-member panel as provided for in the statute?

banc decision of *In re King*, 190 F.3d 479, 481 (6th Cir.1999) (en banc), *cert. denied*, 529 U.S. 1041, 120 S.Ct. 1538, 146 L.Ed.2d 352 (2000), "[a]ny question on whether an en banc rehearing is available under § 2244(b)(3)(E) is foreclosed by the provision that the original panel's decision 'shall not be appealable.'"[4] As we held in that unanimous en banc decision,

> once a panel of this court grants or denies an individual permission to file a second or successive petition in the district court, § 2244(b)(3)(E) prohibits any party from seeking further review of the panel's decision, either from the original panel or from the en banc court.

4. In *Felker v. Turpin*, 518 U.S. 651, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996), the Supreme Court indicated that this limitation is constitutional. *See also* 17A Wright & Miller, FED PRAC. & PROC. § 4267 (West.Supp.2001).

5. It should also be pointed out that the petitioner in *King* was in an identical procedural posture to Byrd: his first federal habeas petition was filed in the district court prior to the enactment of the AEDPA, and his request for permission to file a second habeas petition was filed under § 2244 of the AEDPA. *See In re King*, 190 F.3d 479, 480 (6th Cir.1999) (en banc), *cert. denied*, 529 U.S. 1041, 120 S.Ct. 1538, 146 L.Ed.2d 352 (2000). In *Workman v. Bell*, 227 F.3d 331 (6th Cir.2000) (en banc), *cert. denied*, 531 U.S. 1193, 121 S.Ct. 1194, 149 L.Ed.2d 109 (2001), which addressed the Workman's request to recall our mandate, we pointed out that we "ha[d] not undertaken to review" the denial of Workman's request to file a second habeas petition in the district court. *Id.* (citing and distinguishing *King*).

6. Furthermore, in *King*, we specifically instructed as follows:

> Given our decision today, the clerk of court is directed to return to any party petitions seeking a rehearing or rehearing en banc that challenge a panel's decision granting or denying a request under § 2244(b) to file a second or successive writ of habeas corpus in the district court.

*In re King*, 190 F.3d 479, 482 (6th Cir.1999) (en banc), *cert. denied*, 529 U.S. 1041, 120 S.Ct. 1538, 146 L.Ed.2d 352 (2000).

*King*, 190 F.3d at 480. Thus, under the crystal clear language of § 2244(b)(3)(E) and the unequivocal holding of *King*[5], we do not have jurisdiction over Byrd's petition for rehearing en banc and the petition should be dismissed. *See id.* at 482.[6]

To get around this obvious bar, Byrd argues that "[he] is not asking the Court for permission to file a second habeas petition under § 2244(b) of AEDPA. His petition for rehearing *en banc* asks the Court to decide the preliminary jurisdictional question of whether the AEDPA even applies to his case." Byrd's Petition for Rehearing *En Banc*, at 4.[7] If Byrd's charac-

7. Implicit in Byrd's argument is the erroneous assumption that the *procedural* requirements of the AEDPA requiring a petitioner to seek permission in the Court of Appeals to file a second petition are subject to a retroactivity analysis. As will be discussed, this assumption is flawed, because it confuses the procedural and substantive aspects of the AEDPA's gatekeeping requirements. *See generally Daniels v. United States*, 254 F.3d 1180 (10th Cir.2001) (en banc) (considering separately the AEDPA's procedural and substantive aspects).

Byrd also claims that this Court has jurisdiction to resolve the question of the applicability of the AEDPA. In support, he cites *Mancuso v. Herbert*, 166 F.3d 97, 100 (2d Cir.), *cert. denied*, 527 U.S. 1026, 119 S.Ct. 2376, 144 L.Ed.2d 779 (1999) for the proposition that § 2244(b)(3)(E) "does not bar petitions that ask for reconsideration of the jurisdictional question of whether the AEDPA even applies, *i.e.*, while Section 2244(b)(3)(E) governs how petitions are treated once they are properly located within the AEDPA framework, it does not restrict our authority over the threshold question of whether the AEDPA applies." *Id.* at 100.

Taken out of context, *Mancuso* appears to support Byrd's position. However, in *Mancuso*, at issue was the court's recall of the mandate. After the court of appeals had granted the petitioner's request for an order recalling the mandate, the state moved for reconsideration of that order and moved for an order denying the petitioner's motion for recall of the mandate. The Second Circuit held that

terization of the issue is correct, we lack jurisdiction over this petition because we cannot issue an advisory opinion. In other words, if the AEDPA does not apply as Byrd asserts, Byrd should have filed a new habeas petition in the district court, have it thrown out as successive, and then come to us on appeal for a determination that the AEDPA does not apply. He did not do that. Instead, he has filed for that determination without any basis for it, and is asking for an advisory opinion from us that the AEDPA does not apply, which would then permit him to just file a new petition.

Thus, if "John Byrd's Motion [to] Determine Whether 28 U.S.C. § 2244(b) of the AEDPA Applies to His Case" is anything, it must be a motion seeking permission from the court of appeals to file a second habeas corpus application under 28 U.S.C.

§ 2244(b)(3)(A).[8] This Court has already concluded that the AEDPA's second or successive petition *procedures* apply to cases in which the first habeas petition was filed before the AEDPA's enactment. *See In re Green,* 144 F.3d 384 (6th Cir.1998) (per curiam); *In re Hanserd,* 123 F.3d 922, 924 (6th Cir.1997). *See also In re Minarik,* 166 F.3d 591, 599 (3d Cir.1999) ("Based on our reading of *Landgraf* and *Lindh,* we join two other courts of appeals in holding that AEDPA contains no unambiguous guidance regarding retroactive application of AEDPA's new 'second or successive' petition standards and procedures to cases in which the first habeas petition was filed before AEDPA's enactment."; citing *Green, supra; Hanserd, supra;* and *United States v. Ortiz,* 136 F.3d 161, 165 (D.C.Cir.1998)).[9] *See generally Daniels v.*

---

the state's motion was not barred by § 2244(b)(3)(E):

> However, while Section 2244(b)(3)(E) prohibits those petitions that seek reconsideration of the merits underlying a grant or denial of a habeas petition, *see Calderon v. Thompson,* 523 U.S. 538, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998) ("In a § 2254 case, a prisoner's motion to recall the mandate *on the basis of the merits of the underlying decision* can be regarded as a second or successive application for purposes of § 2244(b)" (emphasis added)), it does not bar petitions that ask for reconsideration of the jurisdictional question of whether the AEDPA even applies . . . .

*Id.* at 99–100.

The request in *Mancuso,* to recall the court's mandate, "is different from an application for a second petition, as the Supreme Court made quite clear recently in *Calderon v. Thompson,* 523 U.S. 538, 118 S.Ct. 1489, 140 L.Ed.2d 728 . . . . (1998)[.]" *Workman v. Bell,* 227 F.3d 331, 333 (6th Cir.2000) (en banc) (order) (an equally divided en banc court denying a subsequent petition to file a second habeas corpus action which was also denied by the original panel), *cert. denied,* 531 U.S. 1193, 121 S.Ct. 1194, 149 L.Ed.2d 109 (2001). Instead, Byrd's motion falls squarely within the confines of our en banc decision in *King.*

**8.** Because he filed his motion with this Court, Byrd has conceded that the AEDPA applies, at least procedurally. The original panel characterized this motion as a request to file a second or successive petition.

**9.** In *Minarik,* the Third Circuit, citing *Hanserd,* rejected the petitioner's argument that subjecting him to the new procedure found in § 2244(b)(3)(A) of the AEDPA was an impermissible retroactive application of the statute.

> Minarik maintains that subjecting him to this new procedure is an impermissible retroactive application of the statute. Section 2244(b)(3)(A), however, is a change in procedural law which falls within the firmly established "procedural change" category described in *Landgraf* that may be retrospectively applied. *See Landgraf,* 511 U.S. at 275, 114 S.Ct. 1483, 128 L.Ed.2d 229 ("Because rules of procedure regulate secondary rather than primary conduct, the fact that a new procedural rule was instituted after the conduct giving rise to the suit does not make application of the rule at trial retroactive.").

> Because AEDPA, as read by the *Lindh* Court in the light of normal principles of statutory interpretation, calls for the application of § 2244(b)(3)(A) to cases filed after April 24, 1996, and because it is a rule of

*United States,* 254 F.3d 1180, 1188 (10th Cir.2001) (en banc) (noting that the AEDPA contains both procedural and substantive aspects). In other words, regardless of whether Byrd's first federal habeas petition was filed pre-AEDPA, he is now required to follow the procedures outlined in § 2244(b)(3)(A) before he can file a second or successive habeas petition. *See Hanserd,* 123 F.3d at 934 (6th Cir.1997) (recognizing that regardless of when their first petitions were filed, prisoners seeking to file a second or successive habeas petition must now apply to the appropriate court of appeals as a gatekeeper under section 2244 of AEDPA).[10]

The Tenth Circuit, citing, *inter alia, Hanserd,* expounded on this procedural aspect of the AEDPA:

It is clearly proper to apply AEDPA's *procedural* framework to all second or successive habeas applications filed after the Act's effective date. The presumption against retroactivity contains a well-established exception for rules of proce-

dure, since procedural rules "regulate secondary rather than primary conduct" and avoid attaching new legal consequences to earlier actions. *Landgraf,* 511 U.S. at 275, 114 S.Ct. 1483, ... *see also Slack,* 529 U.S. at 482, 120 S.Ct. 1595, ... *Minarik,* 166 F.3d at 599 (AEDPA's establishment of courts of appeals as gatekeepers "is a change in procedural law which falls within the firmly established 'procedural change' category described in *Landgraf* that may be retrospectively applied"). That a would-be petitioner must apply to a gatekeeping court of appeals for permission to file a subsequent habeas petition, rather than directly to a district court, does not affect the petitioner's underlying legal rights; it merely speaks to which court will consider his application. *See Graham v. Johnson,* 168 F.3d 762, 782 (5th Cir.1999) ("Substituting the court of appeals for the district court as a gatekeeper against abusive or procedurally defaulted claims would seem to

procedure that does not "attach new legal consequences to events completed before its enactment," petitioners in Minarik's position must seek permission of a Court of Appeals prior to proceeding on a second petition, even if their first petition was filed before the Act was adopted. *See In re Hanserd,* 123 F.3d 922, 934 (6th Cir.1997) ("Inmates who wish to file a second or successive petition should first file a motion in [the Court of Appeals] requesting permission under 28 U.S.C. §§ 2244, 2255, regardless of when the first motion to vacate was filed.").
*In re Minarik,* 166 F.3d 591, 599–600 (3d Cir.1999).

**10.** In *In re Hanserd,* 123 F.3d 922 (6th Cir. 1997), we outlined the procedure for federal inmates who wish to file a second or successive motion to vacate sentence as follows:

Inmates who wish to file a second or successive motion to vacate sentence should first file a motion in this court requesting permission under 28 U.S.C. § 2244, 2255

*regardless of when the first motion to vacate sentence was filed.* If the successive motion is proper under AEDPA's gatekeeping provisions, permission to file a motion in the district court will be granted .... If under the holding of this case permission is not needed because AEDPA's gatekeeping provision cannot be applied pursuant to *Landgraf,* this court will so indicate and will transfer the motion to the proper district court pursuant to 28 U.S.C. § 1631. *Cf.* Fed. R.App. P. 22(a). Motions for permission that fall in neither of these categories i.e., those that would be barred both under the old and new law and those that are barred by a previous motion filed after April 24, 1996—will be denied by order of this court. If either a motion requesting permission or a second or successive motion to vacate sentence is erroneously filed in district court, that court should transfer that motion to this court under 28 U.S.C. § 1631. *See In re Sims,* 111 F.3d 45, 47 (6th Cir.1997).
*Hanserd,* 123 F.3d at 934.

raise no retroactivity concerns. A litigant has no reasonable expectation that a particular tribunal will adjudicate his claims."). Consequently, regardless of when their first petitions were filed, prisoners must turn to our court as a gatekeeper under section 2244 of AEDPA. *See Minarik,* 166 F.3d at 599–600; *In re Hanserd,* 123 F.3d at 934; *accord United States v. Gallegos,* 142 F.3d 1211, 1212 (10th Cir.1998) (per curiam) ("Because [petitioner's third § 2255] motion was filed after ... the effective date of AEDPA, he was required to comply with the Act and obtain prior authorization from this court before filing in the district court.").

*Daniels,* 254 F.3d at 1188–89. *See also Felker v. Turpin,* 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) ("The Act requires a habeas petitioner to obtain leave from the court of appeals before filing a second habeas petition in the district court. But this requirement simply transfers from the district court to the court of appeals a screening function which would previously have been performed by the district court as required by 28 U.S.C. § 2254 Rule 9(b)."); *King,* 190 F.3d at 482 ("As the Supreme Court noted in *Felker* ... the statute transfers from the district court to the court of appeals a screening process previously performed by the district court under Rule 9(b) of the Rules Governing § 2254 Cases in the United States District Courts.").

In short, Byrd's request to file a second habeas petition in the district court arises under § 2244(b)(3)(A) of the AEDPA as a matter of procedure and is therefore not subject to a retroactivity analysis. Because it falls within the procedural gatekeeping requirements of the AEDPA, it is subject to § 2244(b)(3)(E)'s ban on petitions for rehearing. Thus, the panel's decision on whether the AEDPA's new *substantive* gatekeeping standards would have

an impermissible retroactive effect if applied in Byrd's case is not subject to en banc review. *See* § 2244(b)(3)(E); *King, supra.*

This should end the matter.

### Even if the En Banc Court Had Jurisdiction, Byrd is Not Exempted From the AEDPA's Substantive Standards

In *Hanserd* and progeny, we recognized that if the application of the AEDPA substantive standards would have an "impermissibly retroactive effect" on pending cases, then pre-AEDPA law should govern. This Court has explicitly limited *Hanserd,* however. In *In re Sonshine,* 132 F.3d 1133 (6th Cir.1997) (order), we held:

> Because the *Hanserd* court's *Landgraf* analysis was based upon the retroactive effect that AEDPA had on the movant's particular claim, the *Hanserd* holding must be similarly circumscribed. Consequently, while *Hanserd* is not strictly limited to claims arising under *Bailey,* apart from that class of claims, there will be few other cases "in which a difference matters," *Hanserd,* 123 F.3d at 934 n. 21, and on which the gatekeeping requirements of AEDPA will thus have an impermissibly retroactive effect.

*Id.* at 1135. Judge Moore, who authored *Hanserd,* was a member of the unanimous *Sonshine* panel. *See also Green,* 144 F.3d 384 (holding that the Supreme Court's *Old Chief* decision is not retroactive inasmuch as it announced a new rule of law) (order; Kennedy, Contie, Moore, JJ.). Again, in *Coe v. Bell,* 209 F.3d 815 (6th Cir.), *cert. denied,* 529 U.S. 1084, 120 S.Ct. 1716, 146 L.Ed.2d 516 (2000), Judge Moore wrote:

> In *Hanserd,* we concluded that where AEDPA's gatekeeping provision prohibiting second or successive habeas applications prevents a prisoner from bring-

ing a *Bailey* claim under § 2255 but where the claim could have been raised in a subsequent application under the pre-AEDPA law, AEDPA's gatekeeping provision has an impermissible retroactive effect and is not applicable to the *Bailey* claim. *See Hanserd*, 123 F.3d at 929–34. This court subsequently limited its holding in *Hanserd* to the particular claim in that case and concluded that "while *Hanserd* is not strictly limited to claims arising under *Bailey*, apart from that class of claims, there will be few other cases 'in which the difference matters' and on which the gatekeeping requirements of AEDPA will thus have an impermissibly retroactive effect." *In re Sonshine*, 132 F.3d 1133, 1135 (6th Cir. 1997) (quoting *Hanserd*, 123 F.3d at 934 n. 21).... *In light of our Sonshine decision, we cannot accept Coe's interpretation of the Hanserd decision as holding that AEDPA has an impermissible retroactive effect whenever AEDPA's standard of review, applied to an application filed after AEDPA's effective date, results in a decision that would have been different under the pre-AEDPA standard of review.*
209 F.3d at 822–23 (emphasis added).

In *Hanserd*, the petitioner's *Bailey* claim was not available when he filed his first petition because *Bailey* had not yet been decided. The *Hanserd* court concluded that applying § 2244(b)(2) of the AEDPA would work an impermissibly retroactive effect on Hanserd's second habeas petition, because under the pre-AEDPA, abuse-of-the-writ standard, Hanserd would have been allowed to raise his *Bailey* claim, but under the AEDPA he would not. For this reason, Hanserd did not need permission from this Court to file a second habeas petition in the district court.

Although *Hanserd* "is not strictly limited to claims arising under *Bailey*," *Sonsh-*

*ine*, 132 F.3d at 1134–35, we made clear that, "apart from that class of claims," there will be few cases in which application of pre-AEDPA vs. the AEDPA makes a difference. *Id.* Byrd's "actual innocence" claim is not within that "class of claims" because, unlike Hanserd's *Bailey* claim, and like the claims in *Sonshine* and *Green*, Byrd *could have* raised it in his first federal petition, and would have been subject to the abuse-of-the-writ standard under pre-AEDPA law. In rejecting the petitioner's request in *Sonshine*, we stated: "Although couched in Sixth Amendment terms, the issue is basically one arising under the Sentencing Guidelines, which would be barred under both AEDPA and the old abuse-of-the-writ standard. Sonshine would not have prevailed under pre-AEDPA law, as his petition would have been denied as an abuse of the writ." *Id.* at 1135. In rejecting the petitioner's request in *Green*, we held:

Even if *Old Chief* did not announce a "new rule" because it was dictated by precedent, and thus should be retroactively applicable to this case, AEDPA would still be applicable to this case, because doing so would not have a retroactive effect on Green's pre-AEDPA conduct. This is so because Green would not have been able to establish cause to excuse his failure to assert his claim in his first pre-AEDPA § 2255 motion to vacate. If *Old Chief* was dictated by precedent, then his claim would not have been considered "novel," so as to establish cause to excuse his failure to assert this claim in his first motion to vacate....

Thus, even if *Old Chief* did not announce a new rule, applying AEDPA to this case would not have had a retroactive effect on pre-AEDPA conduct. Green would be barred from asserting this claim in a pre-AEDPA motion to

vacate under the abuse of the writ doctrine, as he would not have been able to establish cause to excuse his failure to present this claim in his first motion to vacate . . . .

*Green,* 144 F.3d at.387–88.

Byrd could have raised his actual innocence claim in his first federal habeas petition because (1) he obtained the Brewer affidavit in 1989 and did not file his first petition until 1994, and (2) it was well established by this time that the actual innocence/fundamental miscarriage of justice exception would excuse a procedural default, as well as an abuse of the writ. *See, e.g, Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (procedural default context); *Sawyer v. Whitley,* 505 U.S. 333, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992) (abuse of writ context). In other words, Byrd cannot avail himself of the *Hanserd* exception because he could have raised his actual innocence claim in his first federal habeas petition, but chose not to. Thus, under pre-AEDPA law, Byrd's claim would be rejected as an abuse-of-the-writ. *See McCleskey v. Zant,* 499 U.S. 467, 493–94, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991) (stating that to establish cause to excuse the failure to include a claim in the initial petition, the petitioner must show that "some objective factor *external to the defense* impeded counsel's efforts to raise the claim" in the prior petition.) *Id.* at 493–94, 111 S.Ct. 1454 (emphasis added).[11] In other words, this is not a case "in which a difference matters."

Nor can Byrd take advantage of the actual innocence exception to the abuse-of-the-writ standard. Under either the *Schlup*[12] standard (the petitioner "must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence") or the *Sawyer*[13] standard (the petitioner "must show by clear and convincing evidence that, but for a constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty under the applicable state law"), Byrd's procedural actual innocence claim fails.[14] As detailed in the

11. In fact, Byrd's attorney indicated to the press that he has had the Brewer affidavit since 1989.

12. *Schlup v. Delo,* 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). In *Schlup,* the Supreme Court reiterated that "[t]he meaning of actual innocence as formulated by *Sawyer* and *Carrier* does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty." *Id.* at 329, 115 S.Ct. 851.

13. *Sawyer v. Whitley,* 505 U.S. 333, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992).

14. Byrd argues that the majority misunderstood Ohio law and applied the wrong "actual innocence" test in *Sawyer.* Byrd claims that under Ohio's statute in 1983, the jury was required to convict a capital defendant of the principal offender aggravating circumstance in R.C. 2929.04(B)(7) at the guilt/innocence phase of trial. *See* former R.C. 2929.03(B).

Thus, according to Byrd, had he been acquitted of this aggravator, he was not death-eligible. In other words, without the aggravating circumstance, he would have been guilty "only" of aggravated murder and would have been sentenced only to a "soft" twenty to life term, with parole eligibility at about fourteen years. Byrd further contends that with the aggravator, he could at best hope for a term of at least twenty years to life. Thus, according to Byrd, the principal offender aggravator in Ohio was not merely a "sentence enhancer" as in *Sawyer.* Thus, in Byrd's view, *Schlup* is the correct test.

Although, for the sake of the argument, I have analyzed this claim under *Schlup,* I do not agree that *Schlup* is the correct test. As the Supreme Court pointed out in *Calderon v. Thompson,* 523 U.S. 538, 560, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998):

The *Sawyer* standard has a broader application than is at first apparent. As the Court explained in *Schlup,* when a capital

majority opinion, the 1989 Brewer affidavit contradicts Brewer's own trial testimony, is suspect because it was not made until after double jeopardy had attached to both Brewer's and Byrd's convictions, and is inconsistent with Woodall's dying declaration. As we noted in the panel opinion, this evidence is hopelessly contradictory, both internally, and as between the two codefendants. On the basis of this evidence, it cannot possibly be concluded that it is more likely than not that any reasonable juror would have convicted Byrd in light of this evidence, let alone that this is clear and convincing evidence that would allow us to conclude that no reasonable juror would have found Byrd eligible for the death penalty.

Byrd's "new" evidence is completely unlike the evidence of actual innocence presented in *Schlup*. In *Schlup*, the new evidence included sworn statements of several eyewitnesses that Schlup was not involved in the crime. Furthermore, Schlup presented statements from an inmate who had reported that he sent out the distress call shortly after the disturbance caused by the murder, and a prison guard who testified that Schlup had been in his presence for two and half minutes on his way to the dining room, and that he was not out of breath. These facts created doubt as to whether Schlup could have participated in the murder and still arrived in the prison dining room 65 seconds before the distress call was received (a fact which had been caught on videotape). As the Supreme Court observed, if these facts were true, "it surely [could not] be said that a juror, conscientiously following the judge's instructions requiring proof beyond a reasonable doubt, would vote to convict." *Schlup*, 513 U.S. at 331, 115 S.Ct. 851.

*Schlup* instructs that the court must "assess the probative force of the newly presented evidence in connection with the evidence of guilt adduced at trial." *Id.* at 332, 115 S.Ct. 851. As part of this analysis, "the court may consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence." *Id.* Here of course, the timing of Brewer's first affidavit is highly suspect, because he made it

---

petitioner challenges his underlying capital murder conviction on the basis of an element that "function[s] essentially as a sentence enhancer," the *Sawyer* "clear and convincing" standard applies to the claim. *Schlup, supra,* at 326, 115 S.Ct. 851 .... Thus, to the extent a capital petitioner claims he did not kill the victim, the *Schlup* "more likely than not" standard applies. To the extent a capital petitioner contests the special circumstances rendering him eligible for the death penalty, the *Sawyer* "clear and convincing" standard applies, irrespective of whether the special circumstances are elements of the offense of capital murder or, as here, mere sentencing enhancers.

*Calderon v. Thompson,* 523 U.S. 538, 560, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998).

In our opinion affirming the denial of his first habeas petition, we observed:

Petitioner also was charged with two death penalty specifications; i.e., that he was the "principal offender" who committed the aggravated murder of Monte Tewksbury while committing or attempting to commit the aggravated robbery of King Kwik, as well as the aggravated robbery of Monte Tewksbury himself.[2]

> FN2. In Ohio, the "principal offender" means the "actual killer." *State v. Penix,* 32 Ohio St.3d 369, 513 N.E.2d 744, 746 (Ohio 1987).

*Byrd,* 209 F.3d at 496.

Finally, it must be noted that in his motion before the panel, Byrd argued merely that he was "innocent of the death penalty." Byrd's Memorandum in Support, at 1–2, 46 n. 20. Significantly, Byrd is not claiming that he is innocent of aggravated murder; simply that he was not the "principal offender." It is this specification that warranted the death penalty.

In any event, Byrd's claim fails under either standard.

only after he and Byrd had both been convicted and were covered by double jeopardy. By 1989, Brewer had nothing to lose, and he could exculpate Byrd in the process. *See Drew v. Scott*, 28 F.3d 460, 463 (5th Cir.1994) ("we still have little confidence in [the codefendants] postsentencing truth experience because he had nothing whatsoever to lose by incriminating himself after receiving a 60–year sentence"; rejecting the state prisoner's "new evidence" in the form of recently-obtained statement of a third prisoner claiming that he heard the codefendant take sole credit for the murder before he pled guilty to that murder); *United States v. Vergara*, 714 F.2d 21, 23 (5th Cir.1983) (holding that the district court may deny the defendant a new trial, without an evidentiary hearing, if it determines that a previously silent accomplices's postconviction willingness to exculpate his codefendant is not credible); *Drew v. State*, 743 S.W.2d 207, 228 (Tex. Crim.App. 1987) ("It is not unusual for one of two convicted accomplices to assume the entire fault and thus exculpate his codefendant by the filing of a recanting affidavit or other statement."). If the Brewer affidavit is to be believed, we are in the odd position of having two defendants admittedly at the scene, a dead body, but no convicted murderer.

The Brewer affidavit also lacks credibility because it is inconsistent with his sworn testimony. *Cf. United States v. Chambers*, 944 F.2d 1253, 1264 (6th Cir.1991) ("Recanting affidavits and witnesses are viewed with extreme suspicion."). Brewer's proven status as a liar *in this very case* weighs heavily against the probable reliability of his 1989 and 2001 affidavits. Furthermore, it is inconsistent with Woodall's dying declaration, which happens to be consistent with Brewer's trial testimony. Even under the more lenient *Schlup* standard, it simply cannot be said that no juror would vote to convict on the basis of Brewer's 1989 affidavit, because it contradicts his earlier testimony under oath, and because it is inconsistent with all-but-one of Woodall's statements over the years.

Quite simply, Byrd cannot meet the pre-AEDPA actual innocence standard because the only "new" evidence he has is the affidavit of a proven liar. The probative force of the Brewer affidavit is de minimis. Brewer's changing testimony cannot come close to meeting the actual innocence articulated in either *Sawyer* or *Schlup*.

Byrd also cavalierly attempts to introduce affidavits of eight former inmates, who claim that Armstead lied. Byrd claims that "[t]his is not rehash of an old claim. It is not the initial habeas claim that Armstead had an undisclosed deal. Rather, these affidavits are new evidence, not presented at trial or in the original habeas, and they support a new claim— Ronald Armstead's crucial testimony was a lie, deal or no deal." Byrd's Petition, at 7–8 n. 2. These affidavits may be new, but they do not support a new claim, as the following passage in the panel decision in Byrd's appeal from the denial of his first habeas petition reveals:

> On appeal, Petitioner posits several challenges to Armstead's testimony.... Second, Petitioner alleges that Armstead's testimony about Petitioner's confession was false in all material respects. In support of his position, Petitioner presented affidavits from several individuals who were incarcerated with Armstead and Petitioner in the Cincinnati Workhouse in the Spring of 1983. Petitioner asserts that these affidavits show that Armstead and another inmate, Virgil Jordan, were involved in a scheme to testify falsely against Petitioner in order to further their own causes with the Hamilton County Prosecutor's Office.

*Byrd v. Collins*, 209 F.3d 486, 500 (6th Cir.2000), *cert. denied*, 531 U.S. 1082, 121 S.Ct. 786, 148 L.Ed.2d 682 (2001). As we noted in the panel decision, Byrd's renewed attacks on Armstead's credibility are barred under § 2244(b)(1)("A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed."). Byrd's attempt to otherwise throw this evidence into the mix is utterly improper.

### The Policies Underlying Habeas Jurisprudence Direct That This Case Come to an End

In addition to contravening the express directive of the AEDPA, the En Banc Court's consideration of this case runs counter to the strong policy concerns that underlie federal habeas jurisprudence. The Supreme Court recently reiterated these principles in *Calderon:*

> In light of "the profound societal costs that attend the exercise of habeas jurisdiction," *Smith v. Murray,* 477 U.S. 527, 539, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986), we have found it necessary to impose significant limits on the discretion of federal court to grant habeas relief. *McCleskey v. Zant,* 499 U.S. 467, 487, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).
>
> These limits reflect our enduring respect for "the State's interest in the finality of convictions that have survived direct review within the state court system." [*Brecht v. Abrahamson,* 507 U.S. 619, 635, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) ] ... Finality is essential to both the retributive and the deterrent functions of criminal law. "Neither innocence nor just punishment can be vindicated until the final judgment is known." *McCleskey, supra,* at 491, 111 S.Ct. 1454. "Without finality, the criminal law is deprived of much of its deterrent ef-

fect." *Teague, supra,* at 309, 109 S.Ct. 1060.

> Finality also enhances the quality of judging. There is perhaps "nothing more subversive of a judge's sense of responsibility, of the inner subjective conscientiousness which is so essential a part of the difficult and subtle art of judging well, than an indiscriminate acceptance of the notion that all the shots will always be called by someone else." Bator, Finality in Criminal Law and Federal Habeas Corpus for State Prisoners, 76 Harv. L.Rev. 441, 451 (1963).
>
> Finality serves as well to preserve the federal balance. Federal habeas review of state convictions frustrates " 'both the States' sovereign power to punish offenders and their good-faith attempts to honor constitutional rights." ' *Murray v. Carrier, supra,* at 487, 106 S.Ct. 2639[.] ... "Our federal system recognizes the independent power of a State to articulate societal norms through criminal law; but the power of a State to pass laws means little if the State cannot enforce them." *McCleskey,* 499 U.S. at 491, 111 S.Ct. 1454.

*Calderon,* 523 U.S. at 554–56, 118 S.Ct. 1489 (some internal citations and quotation marks omitted).

A decision by the En Banc Court to hear this case will not only be contrary to the rule of law, as clearly defined by the AEDPA, but will violate important principles of habeas jurisprudence.

For all the foregoing reasons, and those set forth in the opinion denying Byrd's appeal from the denial of his first habeas petition, *see Byrd v. Collins,* 209 F.3d 486 (6th Cir.2000), *en banc rehearing denied, Byrd v. Collins,* 227 F.3d 756, *amended en banc order* (6th Cir. Aug. 22, 2000), *cert. denied,* 531 U.S. 1082, 121 S.Ct. 786, 148 L.Ed.2d 682 (2001), as well as the panel

decision denying Byrd's request for permission to file a second habeas petition, *See In re Byrd,* —— F.3d ——, No. 01–3927 (6th Cir. Sept. 11, 2001), I submit that Byrd's petition for rehearing en banc should be denied, and that the *sua sponte* remand is improper. I therefore dissent.

### APPENDIX

A majority of the judges in regular active service have voted that the court remand this matter for the development of a factual record sufficient to permit *sua sponte* consideration of a request for leave to file a second petition for a writ of habeas corpus. The jurisdictional basis for a rehearing *sua sponte* is *Triestman v. United States,* 124 F.3d 361, 367 (2d Cir. 1997); *Krimmel v. Hopkins,* 56 F.3d 873, 874 (8th Cir.1995).

The remand for the development of a factual record is ancillary in nature to the petition for the writ of habeas corpus. A majority of the active judges has decided that a factual basis does not exist sufficient to permit the en banc court to entertain the Petitioner's request for a successive filing. We therefore issue this remand, directed to the Chief Judge of the Southern District of Ohio for appointment of a Magistrate Judge to promptly conduct an appropriate factual hearing.

The hearing should develop a record with regard to John Byrd's claim of innocence presented to the Ohio courts but on which no testimony of witnesses or evidence was taken. We direct that the scope of the factual inquiry conducted by the Magistrate Judge shall include testimony relating to matters set forth in the affidavits of John Brewer, Dan Cahill, Darryl Messer, Roger Hall and Benny Fields.

In addition, the factual inquiry shall include, but is not limited to, an examination of the following:

1. Documents prepared by the Hamilton County Prosecutor's Office and/or Hamilton County Sheriff's Department authorizing, directing or identifying Ronald Armstead, Virgil Jordan, Marvin Randolph and Robert Jones to be questioned in matters relating to the issue of innocence raised in this matter.

2. Documents prepared or received by the Hamilton County Prosecutor's office or Hamilton County Sheriff's Department or Cincinnati Police Department relating to Ronald Armstead's incarceration, testimony and parole revocation hearing and disposition.

3. Documents or reports received by the Attorney General's office or Hamilton County Prosecutor's office from the Ohio Department of Corrections or its institutions, relating to this matter.

We further direct that this matter proceed on an expedited basis with the Magistrate Judge submitting a report with factual findings and recommendations to the en banc court within 45 days from date of the appointment of the Magistrate Judge.

**IT IS ORDERED** that the matter be, and it hereby is remanded. The Magistrate Judge shall report factual findings to this court, which retains jurisdiction in the matter.

**IT IS FURTHER ORDERED** that the stay of execution currently in place remain in force, pending further order of this court.